UNITED STATES of America and Ulyesse Bourque, Internal Revenue Agent, Petitioners,

v.

**MOBIL CORPORATION,**
et al., Respondents.

No. 3:92–CV–0068–T.

United States District Court,
N.D. Texas,
Dallas Division.

April 13, 1993.

Joe A. Pitzinger, U.S. Dept. of Justice, Tax Div., Dallas, for U.S.

Joseph Angland, Dewey & Ballantine, New York City, for Robert L. Book.

## ORDER DENYING PETITION TO ENFORCE INTERNAL REVENUE SUMMONS

MALONEY, District Judge.

This matter is before the Court on Petitioners' January 10, 1992, petition to enforce an internal revenue service summons.[1] Respondents filed their brief in opposition on February 18, 1992. The Court held a hearing on Petitioners' request on April 24, 1992. The Court, having considered the parties' briefs and the arguments presented at the hearing, is of the opinion that the petition should be denied.

### I

The United States moves the Court to order Defendants to comply with an Internal Revenue Service summons issued to Robert L. Book, the manager of tax administration for Mobil Administrative Services Company.

---

1. The case originally involved two IRS summonses. However, an agreement was reached as to the information sought in one of the summonses.

The summons was issued pursuant to an investigation of the pricing of Saudi crude between 1979 and 1981. The IRS is investigating the pricing of Saudi crude oil between Mobil and its affiliates to determine whether the pricing clearly reflects the income of the corporations.[2] The documents being sought purportedly relate to an audit by the German taxing authority, similar to the one being conducted by the IRS, which resulted in a settlement with Mobil's wholly-owned German subsidiary, Mobil Oil Aktiengesellschaft (MOAG).

The summons required Book to testify and produce documents in the matter of the tax liability for Mobil Oil Corporation and MOAG for the years 1979, 1980, and 1981. Petitioners argue that the information sought may be relevant to an ongoing investigation of Mobil Oil Corporation's income tax liability.

On March 5, 1991, in response to the summons, Book appeared at the designated IRS office. However, he refused to provide the requested documents. After taking the required administrative steps, the United States initiated this action to enforce the summons as to the documents not provided. Subsequent to the filing, the parties reached agreements as to some of the requested documents. There remains a dispute as to fourteen documents and attachments. Mobil opposes the enforcement of the summons as to the fourteen documents on two grounds: (1) attorney-client privilege; and (2) the attorney work-product doctrine.[3]

## II

### A

■■■ The attorney-client privilege protects two related, but different, communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communi-

cation from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client. *In re LTV Securities Litigation,* 89 F.R.D. 595, 600–03 (N.D.Tex.1981).[4] Mobil bears the burden of proving that the documents are protected by either the attorney-client privilege or the attorney work-product doctrine. *United States v. Kelly,* 569 F.2d 928, 938 (5th Cir.), *cert. denied,* 439 U.S. 829, 99 S.Ct. 105, 58 L.Ed.2d 123 (1978).

■■■ To invoke the attorney-client privilege, the claimant must establish the following elements: (1) the asserted holder of the privilege is or sought to become a client; (2) the person to whom the communication was made is (a) a member of a bar of a court, or his subordinate, and (b) in connection with this communication is acting as a lawyer; (3) the communication relates to a fact of which the attorney was informed (a) by his client (b) without the presence of strangers (c) for the purpose of securing primarily either (i) an opinion on law or (ii) legal services (iii) or assistance in some legal proceeding, and (d) not for the purpose of committing a crime or tort; and (4) the privilege has been (a) claimed and (b) not waived by the client. *In re LTV Securities Litigation,* 89 F.R.D. at 600. Of course, the elements vary slightly when the claimant is attempting to prove the existence of a privilege based on a communication from an attorney to his client.

### B

Mobil also claims that, to the extent the documents are not protected by the attorney-client privilege, they are protected by the work-product doctrine. *See, e.g., Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947). The work-product rule is codified in Rule 26(b)(3) of the Federal Rules of

---

**2.** Title 26 U.S.C. § 482 authorizes the IRS to allocate or reallocate income, deductions, or credits among related corporations where such allocation or reallocation is necessary to prevent tax evasion or to clearly reflect the income of the corporations.

**3.** Initially, Mobil raised a number of other arguments in opposition to the summons. However,

at the hearing the parties represented that all opposition had been dropped except these two arguments relating to the fourteen documents.

**4.** Pursuant to Rule 501 of the Federal Rules of Evidence, federal law governs the availability and scope of the attorney-client privilege in this case.

Civil Procedure, which provides, in pertinent part:

(3) *Trial Preparation: Materials*

Subject to the provisions of subdivision (b)(4) of this rule, a party may obtain discovery of documents and tangible things otherwise discoverable under subdivision (b)(1) of this rule and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative (including the other party's attorney, consultant, surety, indemnitor, insurer or agent) only upon a showing that the party seeking discovery has substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation.

Having identified the basic elements of the privileges asserted, the Court will discuss each of the fourteen documents individually.

### III

■ Document 1 is a letter from H. Breedek, tax counsel for MOAG, to R.F. Dodds, supervisory tax counsel for Mobil. The identity and corporate affiliation of the parties involved in this document raise one of the more difficult issues in addressing the merits of Respondents' arguments. Breedek and Dodds are attorneys for different, albeit related, corporations, MOAG and Mobil Oil, respectively. The Court must consider the effect of communications between attorneys for different, but related, entities on an assertion of attorney-client or work-product privilege. ·

■ It is undisputed that communications between a corporation and its inside counsel are protected in the same manner and to the same degree as communications with outside counsel. *Upjohn Co. v. United States*, 449 U.S. 383, 389–97, 101 S.Ct. 677, 682–86, 66

L.Ed.2d 584 (1981); *In re LTV Securities Litigation*, 89 F.R.D. at 602. In *Upjohn*, the Supreme Court held that the privilege applies to communications by any corporate employee regardless of position when the communications concern matters within the scope of the employee's corporate duties and the employee is aware that the information is being furnished to enable the attorney to provide legal advice to the corporation. 449 U.S. at 394, 101 S.Ct. at 685. Rather than adopting a specific test for application of the privilege to corporations, the Court held that each case must be evaluated to determine whether application of the privilege would further the underlying purpose of the privilege. *Id.* at 396–97, 101 S.Ct. at 686.

The *Upjohn* Court rejected a mechanistic approach to application of the attorney-client privilege. Recognizing this fact, the Ninth Circuit adopted a test for determining whether communications between employees of a subsidiary and counsel for a parent corporation fall within the privilege. *Admiral Ins. v. United States Dist. Court for Dist. of Ariz.*, 881 F.2d 1486, 1493 n. 6 (9th Cir.1989). The Court stated:

[C]ommunications between employees of a subsidiary corporation and counsel for the parent corporation, like communications between former employees and corporate counsel, would be privileged if the employee possesses information critical to the representation of the parent company and the communication concerns matters within the scope of the employment.

*Id.*

This Court is of the opinion that the Ninth Circuit's ruling on this matter falls within the scope and spirit of the privilege. However, as required by the *Upjohn* Court, this Court must avoid application of a rigid test and evaluate whether the application of the privilege would further the purpose of the privilege.

■ The purpose of the attorney-client privilege is to "encourage frank and full communication between attorneys and their clients and thereby promote broader public interests in the observance of law and administration of justice." 449 U.S. at 389, 101

S.Ct. at 682. The privilege is based upon two related premises: (1) that an attorney needs to know all that "relates to the client's reasons for seeking representation if the professional mission is to be carried out"; and (2) that the privilege is necessary "to encourage clients to make full disclosure to their attorneys." *Id.*

The Court is of the opinion that the application of the privilege to document 1 would serve the purpose of the privilege. The communication relates to tax consequences for certain actions involving the activity between parents and subsidiaries. Therefore, the Court finds that document 1 is protected by the attorney-client privilege. Further, the Court is of the opinion that document one is composed wholly of information that constitutes mental impressions, conclusions, opinions, and legal theories of attorneys representing MOAG in the administrative proceedings with the German tax authorities. Therefore, the document is protected from disclosure by the work-product privilege.

■ Document 2 is an internal memorandum generated by Mobil's tax department. The document specifically relates to the investigation by the German tax authorities. This document is protected by the attorney-client privilege and the work-product privilege.[5]

■ Documents 3, 5, 9, 10, and 11 are reviews of German tax law for the years 1980, 1981, 1982, 1984, and 1985, respectively. The documents discuss German tax law generally, and in regard to specific transactions undertaken by Mobil and its subsidiaries. The document was generated by counsel for Mobil Corporation and distributed to various personnel within the parent and subsidiaries. These documents fall squarely within scope of the attorney-client privilege. Document 3 also contains portions prepared in connection with the investigation by the German tax authorities. For this reason, document 3 is also protected by the work-product privilege. However, documents 5, 9, 10, and 11 do not discuss the German tax proceedings. There-

fore, the Court is unable to conclude that these documents were prepared in anticipation of litigation and therefore finds that they are not protected by the work-product privilege.

■ Document 4 is an internal letter from one of Mobil's supervisory tax counselors to three other counselors in Mobil's tax department. The letter contains information relating to the consequences of selling Saudi Crude above or below the official selling price. The document, while not generated in anticipation of litigation, meets the test for application of the attorney-client privilege. This is a document generated and received by Mobil's attorneys relating to the legal effect of certain activities engaged in by Mobil and its subsidiaries. The Court finds that document 4 is protected by the attorney-client privilege.

■ Document 6 is a letter from tax counsel for MOAG to a MOAG official. The document discusses the arguments being asserted by the German tax authorities in regard to the investigation. The document also proposes responses and counter-arguments. This document is protected by the attorney-client privilege and work-product privilege.

■ Document 7 discusses an investigation into the tax laws of certain countries and the obligations of Mobil and its subsidiaries under various contracts. The document was generated by MOAG's general counsel and sent to MOAG's finance director. The document is protected by the attorney-client privilege. There is nothing to suggest that the document was prepared in anticipation of litigation. Therefore, the Court finds that document 7, while protected by the attorney-client privilege, is not protected by the work-product privilege.

■ Document 8 was generated by counsel for MOAG and sent to counsel for Mobil. The document discusses a meeting held by the drafter with a representative of the German tax authority. The document discusses strategy and settlement possibilities. This

---

5. The court's analysis is inevitably restrained by the necessity of maintaining the confidentiality of the documents in question.

document is protected by the attorney-client and work-product privileges.

■ Document 12 is a letter from MOAG's tax counsel to various officers of Mobil and members of Mobil's tax department. The document discusses the state of settlement negotiations with the German tax authorities. The Court finds that this document is protected by the attorney-client and work-product privileges.

■ Document 13 is a letter from a Mobil tax counselor to members of Mobil's tax department; Mobil officers; counsel for MOAG; and an officer of another Mobil subsidiary. The letter discusses a proposed settlement of the investigation by the German tax authorities. The document is protected by the attorney-client privilege and the work-product doctrine.

■ Document 14 is a telex from a member of MOAG's tax department to one of Mobil's supervisory tax counsel. The document discusses the settlement of the German tax investigation. The document is a communication from a client to its lawyer relating to the provision of legal services. Therefore, it is protected by the attorney-client privilege.

### IV

For the foregoing reasons, the Court concludes that the 14 documents sought by the Petitioner are protected by either the attorney-client or work-product privilege. The Court further finds that no exceptions to these privileges are applicable in this case.

It is therefore **ORDERED** that Petitioners' January 10, 1992, petition to enforce internal revenue service summons is denied.