992 A.2d 845

## Gary KELLY

v.

## WORKERS' COMPENSATION APPEAL BOARD (U.S. AIRWAYS GROUP, INC.).

**Appeal of U.S. Airways Group, Inc.**

Supreme Court of Pennsylvania.

Argued March 2, 2009.

Decided April 9, 2010.

Christian Michael Stein, Rawle & Henderson, LLP, for US Airways Group, Inc.

Lawrence R. Chaban, AlpernSchubert, P.C., for Kelly, Gary.

Amber Marie Kenger, Richard C. Langler, Robert E. Giles, Worker's Compensation Appeal Board, for Worker's Compensation Appeal Board.

Douglas Albert Williams, Sitzmann Law Firm, Ltd., for Pennsylvania Association for Justice.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, GREENSPAN, JJ.

### *OPINION*

Justice BAER.

US Airways Group, Inc. (Employer) appeals from the Commonwealth Court's holding that Employer is not entitled to a credit against the workers' compensation benefits paid to its employee, Gary Kelly, (Claimant), for the amount of the

furlough allowance concurrently paid to Claimant, because the furlough allowance is not a "severance benefit" under Section 204(a) of the Workers' Compensation Act (Act), 77 P.S. § 71. After careful consideration, we agree with the Commonwealth Court that a furlough allowance is not a severance benefit, and, therefore, affirm its conclusion that Employer is not entitled to credit against the workers' compensation payments for the furlough allowance it simultaneously paid to Claimant.

The facts are not in dispute. On September 20, 2004, Claimant, who is a member of the passenger service employees' union, injured his right knee in the scope and course of employment with Employer when he slipped on the back of a catering truck while preparing to load an aircraft. On November 8, 2004, Claimant filed a claim petition seeking partial disability benefits from September 20, 2004 through November 7, 2004, and total disability benefits thereafter. Also on November 8, 2004, for reasons unrelated to Claimant's injury, Employer furloughed Claimant pursuant to a collective bargaining agreement (CBA) between Employer and its passenger service employees. As a result of the furlough, in accord with the CBA, Claimant began receiving a "furlough allowance," which was based on accumulated years of service.[1] R.R. 95a. Also in accord with the CBA, Claimant had the right to be recalled to a position with Employer within four

1. Article 10 of the CBA provides, in relevant part:
    A. Furlough Allowance
    1. Furlough allowance is paid to employees who are furloughed as a result of a reduction-in-force and for no other reason ...
    2. Full-time employees who have completed two (2) or more years of service, based on Hire Date, on the date furloughed will receive furlough allowance at the rate of one (1) week's pay for each completed year of service, up to a maximum of fifteen (15) weeks. A week of furlough allowance is computed on the basis of the employee's base straight time hourly rate at the time of furlough, multiplied by forty (40) hours.

    *       *       *

    4. Furlough allowance is paid in successive pay periods immediately following the effective date of the furlough until the employee has returned to work or the entitlement is exhausted, whichever occurs first.
    R.R. 95a.

years.[2] In fact, Claimant was recalled effective March 21, 2005, to a part-time catering position.

The parties entered into an agreement recognizing the work-related injury and acknowledging the payment of partial disability benefits for the period of September 20, 2004 through November 16, 2004, and a suspension of benefits as of November 17, 2004, when Claimant was released to return to full duty work. It is undisputed that from November 8 through November 16, 2004, Claimant received a furlough allowance from Employer in addition to workers' compensation payments. At a hearing before the workers' compensation judge (WCJ) on May 17, 2005, Employer asserted that it was entitled to a credit against the workers' compensation payments for the furlough allowance, pursuant to Section 204(a) of the Workers' Compensation Act, 77 P.S. § 71(a), which provides, in relevant part, as follows:

> (a) ... if the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. *The severance benefits paid by the employer directly liable for the payment of compensation* and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe *shall also be credited*

**2.** A letter of understanding dated October 3, 2002 from Employer to union officials indicated that furloughed passenger service employees such as Claimant maintained a right of recall for a period of four years. R.R. 97a.

*against the amount of the award made under sections 108 and 306,* except for benefits payable under section 306(c). 77 P.S. § 71(a) (emphasis added).

■ As is relevant to this case, under Section 204(a), an employer is entitled to credit against workers' compensation benefits for any amount paid to the employee as a severance benefit. Although the Act does not define "severance benefit," the Department of Labor and Industry's (Department) regulation does, and provides as follows:

> Severance benefit—A benefit which is taxable to the employe and paid as a result of the employe's separation from employment by the employer liable for the payment of workers' compensation, including benefits in the form of tangible property. The term does not include payments received by the employee based on unused vacation or sick leave or otherwise earned income.

34 Pa.Code § 123.2. The crux of Employer's argument before the WCJ was that the furlough allowance it paid to Claimant was a "severance benefit" for which Employer was entitled to credit against the amount of the workers' compensation payments. To prove this point before the WCJ, Employer offered the testimony of a labor and employment law attorney, who stated that within the labor and employment law setting, severance benefits generally include any wage loss benefits paid because of a separation from employment for any reason, including termination, reduction in force, layoffs, or plant closings, regardless of whether the separation is temporary or permanent. Claimant denied that Employer was entitled to credit, and argued that the furlough allowance could not be considered a severance benefit because, due to the Employer's ability to recall the Claimant to work, Claimant's separation from employment was not permanent.

Pursuant to its interpretation of Section 204(a) and the regulatory definition of severance benefit at 34 Pa.Code § 123.2, the WCJ found that Claimant's furlough allowance was a severance benefit, and granted Employer a credit for the week during which Claimant received both workers' com-

pensation benefits and a furlough allowance. The WCJ concluded that neither the statute nor the regulation required that the separation from employment be permanent in order for a payment resulting from that separation to qualify as a severance benefit. According to the WCJ, the only pertinent inquiry was that directed by the regulatory definition of severance benefit, 34 Pa.Code § 123.2: whether the benefit was taxable to the employee and paid as a result of the employee's separation from employment. Because the furlough allowance was taxable to the Claimant and paid by Employer as a result of Claimant's separation from Employer, the WCJ concluded that the furlough allowance was a severance benefit and granted Employer credit for the furlough allowance. The WCJ found that there was no legal or contractual difference between the terms "furlough" and "severance" for purposes of the Act's credit provision.

Claimant appealed to the Workers' Compensation Appeal Board (WCAB), which affirmed. The WCAB agreed with the analysis of the WCJ and rejected Claimant's argument that "severance benefits," are only payable upon permanent separation.

On appeal, the Commonwealth Court reversed. *Kelly v. W.C.A.B. (U.S.Airways)*, 935 A.2d 68 (Pa.Cmwlth.2007). The court agreed with Claimant that because the furlough allowance was paid during a non-permanent separation from employment, it was not a severance benefit under Section 204(a) of the Act. According to the court, a furloughed employee maintains an employment relationship with the employer, but that relationship is held in abeyance due to an employer's lack of work or financial resources. The court continued that, distinct from a severance, an employee who is furloughed retains the prospect of returning to work with the employer, and, importantly, furlough does not affect his seniority.

Judge Leavitt dissented, reasoning that there was no authority to read a requirement of permanence into the term "severance benefit." Further, the dissent believed that the majority's interpretation permitted double recovery for a single wage loss, contrary to *Kramer v. W.C.A.B. (Rite Aid*

*Corp.),* 584 Pa. 309, 883 A.2d 518, 535 (2005) ("The worker experiences only one loss of earnings at a time ... the employer can avoid paying duplicate benefits for the same loss of earnings by using the offset."). Judge Leavitt opined that Claimant experienced only one loss of earnings, and, pursuant to *Kramer,* Section 204(a) relieves the employer of having to pay twice for the same loss of earnings.

The case is now before us to resolve the question of whether Employer is entitled to a severance benefit offset, pursuant to Section 204(a) of the Act, for a furlough allowance. In workers' compensation appeals, this Court will affirm the adjudication below unless we find that an error of law was committed, that constitutional rights were violated, that a practice or procedure of a Commonwealth agency was not followed, or that any necessary finding of fact is not supported by substantial evidence of record. 2 Pa.C.S. § 704; *Kramer,* 883 A.2d at 523; *Hannaberry HVAC v. W.C.A.B. (Snyder, Jr.),* 575 Pa. 66, 834 A.2d 524, 527 (2003). For purposes of this appeal, the facts are undisputed. The questions raised are purely legal and, as such, this Court's review is plenary. *See Kramer,* 883 A.2d at 523.

According to Employer, there is no basis for the Commonwealth Court's conclusion that severance benefits are contingent on permanent separation from employment. Employer asserts that neither the Act nor the regulatory definition of "severance benefits" places such a limitation on these benefits. In the labor law setting, Employer argues, the term "severance benefit" encompasses any benefit paid to an employee for wage loss due to separation from employment for any one of multiple reasons, including termination, layoff, furlough, reduction in labor force, and plant closings.

Employer does not address specifically whether it considers the words of Section 204(a) unambiguous, nevertheless, its argument focuses on legislative intent, asserting that the purpose of Section 204(a) is to expand employers' right to workers' compensation offsets to reduce costs. Employer argues that this Section was amended in 1993 and again in

1996 to expand the right of employers to take a credit against workers' compensation payments, and, accordingly, the courts of this Commonwealth have construed the amendments to Section 204(a) to expand the credit possibilities for employers. *See Mosley v. W.C.A.B. (City of Pittsburgh),* 937 A.2d 607, 609 (Pa.Cmwlth.2007) ("Ever since the 1993 amendments ... our courts have construed that language to expand the credit possibilities for employers by allowing offsets against all compensation awards ..."). In fact, Employer notes that this Court, in *Kramer,* considered the legislative intent underpinning Section 204(a), and recognized that the provision served the legitimate government interest of reducing the cost of workers' compensation benefits in Pennsylvania. *Kramer,* 883 A.2d at 536. According to Employer, allowing a certain class of workers (*i.e.,* those employees receiving a furlough allowance and workers' compensation payments) to receive double recovery from their employer frustrates the purpose of Section 204(a), which is to control costs through enlargement of the scope of an employers' right to credit. Employer asserts that the Commonwealth Court erred by refusing an offset under these facts, and has therefore frustrated the policy of the General Assembly.

Employer further argues that the title of a benefit matters less than what the benefit actually is; *e.g.,* a severance benefit by any other name, in this case a furlough allowance, is still a severance benefit within the definition of the regulation, 34 Pa.Code 123.2. Employer asserts that nothing in the Act, regulations, case-law, or common usage of the word severance requires that a separation from employment be permanent in order for the resulting benefit to be a severance benefit. According to Employer, whether the employee retains an employment relationship, such as the right to be recalled to work, is of no moment because the benefit was taxed to Claimant and paid by Employer. *See* 34 Pa.Code 123.2 (defining severance benefit as being taxable to the employee and paid by the employer).[3]

3. Employer also argues that it was improper for the Commonwealth Court to consider how the parties used the word furlough in their CBA.

Employer notes that pursuant to Section 204(a), employers are also entitled to credit against workers' compensation payments for unemployment compensation, social security benefits, and pension benefits. Employer argues that there is no requirement in the statute that the employee permanently separate from employment in order to receive these benefits; thus, Employer proposes there is no reason to treat a severance benefit differently by requiring that it be permanent.

Claimant counters that the plain meaning of the term severance is a permanent separation, and that the Commonwealth Court applied this common sense definition to the term as required by the Statutory Construction Act. 1 Pa.C.S. § 1903(a) ("Words and phrases shall be construed according to rules of grammar and according to their common and approved usage ..."). Further, referring to the regulation's definition of "severance benefit," which provides that such a benefit is one that is payable "as a result of employee's separation from employment," Claimant argues that "separation" is a permanent state resulting from, *inter alia,* the termination of a contractual relationship. Claimant argues that if the legislature and the Department wanted to provide credit for a furlough allowance, they would have done so, and there is no basis for the courts to rewrite the statute or regulation to expand those benefits that can be credited against workers' compensation payments.

Claimant further argues that the furlough allowance was an accrued benefit, like sick pay, which he depleted while furloughed, and refers to case law and the Department's regulation, 34 Pa.Code 123.2, establishing that employers are not entitled to credit for the payment of accrued benefits or

According to Employer, disputes arising from the interpretation of terms of a CBA should be determined by an arbitrator in the first instance. *See R.B. Electric Co. v. Electrical Workers, IBEW Local 569,* 781 F.2d 1440 (9th Cir.1986). To the extent it was proper for the Commonwealth Court to interpret the CBA's language, Employer argues that the court should have considered the parties' intent that the furlough allowance described in the CBA was actually a severance benefit. We disagree with Employer in this regard. In resolving this case, we have not interpreted the language of the CBA; rather, we simply relied on the express language contained therein.

earned income.  *See Temple v. Pa. Dep't of Highways and State Workmen's Ins. Fund,* 445 Pa. 539, 285 A.2d 137 (1971) (denying credit for sick pay received by an injured worker during the same period that disability benefits were paid, finding that the employer could not obtain credit where the claimant would lose the right to the equivalent sick time upon his return to work); *Toborkey v. W.C.A.B. (H.J. Heinz),* 655 A.2d 636, 638 (Pa.Cmwlth.1995) (holding that the employer was not entitled to credit for death and disability insurance payments or disability pension because those payments represented accrued benefits).  Claimant argues that like sick pay, vacation pay, or any other accrued and depletable benefit, the furlough allowance is a finite amount of earned income that Claimant accrued over his years of service and dissipated while temporarily furloughed.  Thus, under the terms of the CBA, when Claimant was away from work he used this benefit, and when he returned he had to start accruing it as if he were a new employee.  Claimant argues that providing credit to Employer for the furlough allowance places the cost of the disability on the injured worker, contrary to the dictates of this Court in *Temple.*

█ █ The principles governing this Court's review when examining the language of a statute are settled.  The object of interpretation and construction of Pennsylvania statutes is to ascertain and effectuate the intention of the General Assembly.  *See* 1 Pa.C.S. § 1501 *et seq.*  In construing statutory language, "[w]ords and phrases shall be construed according to rules of grammar and according to their common and approved usage. . . ." 1 Pa.C.S. § 1903(a).  The dispute in this case involves the meaning of "severance benefit" in Section 204(a) of the Act. The Statutory Construction Act provides that "[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit," 1 Pa.C.S. § 1921(b).  *See also Kramer,* 883 A.2d at 525; *Bowser v. Blom,* 569 Pa. 609, 807 A.2d 830, 835 (2002).  It is only when "the words of the statute are not explicit" on the point at issue that resort to statutory

construction is appropriate. 1 Pa.C.S. § 1921(c); *Kramer*, 883 A.2d at 525.

Further, "[o]ur basic premise in workmen's compensation matters is that the Workmen's Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Hannaberry*, 834 A.2d 524 (quoting *Peterson v. W.C.A.B. (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116, 1120 (1991)). Accordingly, "borderline interpretations" of the Act "are to be construed in the injured party's favor." *Hannaberry*, 834 A.2d at 528 (quoting *Harper & Collins v. W.C.A.B. (Brown)*, 543 Pa. 484, 672 A.2d 1319, 1321 (1996)).

It is undisputed that the money paid to Claimant was designated "furlough allowance" in the parties' CBA, and was paid with the understanding that Claimant had a right to be recalled to work. Nevertheless, Employer's position is that the furlough allowance is a severance benefit in accord with Section 204(a) of the Act. This section provides that an employer is entitled to credit against workers' compensation benefits for four specific, narrowly defined types of payments: unemployment compensation, old age benefits under the Social Security Act, pension benefits, and severance benefits. Specifically, Section 204 provides, in relevant part:

(a) ... if the employe receives unemployment compensation benefits, such amount or amounts so received shall be credited as against the amount of the award made under the provisions of sections 108 and 306, except for benefits payable under section 306(c) or 307. Fifty per centum of the benefits commonly characterized as "old age" benefits under the Social Security Act (49 Stat. 620, 42 U.S.C. § 301 et seq.) shall also be credited against the amount of the payments made under sections 108 and 306, except for benefits payable under section 306(c): Provided, however, That the Social Security offset shall not apply if old age Social Security benefits were received prior to the compensable injury. *The severance benefits paid by the employer*

*directly liable for the payment of compensation* and the benefits from a pension plan to the extent funded by the employer directly liable for the payment of compensation which are received by an employe *shall also be credited against the amount of the award made under sections 108 and 306, except for benefits payable under section 306(c).*

\*　　\*　　\*

(d) The department shall prepare the forms necessary for the enforcement of this section and issue rules and regulations as appropriate.

77 P.S. § 71 (emphasis added). Accordingly, with regard to "severance benefits," an employer is entitled to credit for such benefits against an award paid under Section 108 for occupational disease, 77 P.S. § 27.1, and under Section 306(a) and (b) for total and partial disability, 77 P.S. §§ 511, 512, but no credit can be obtained against an award of compensation paid pursuant to Section 306(c) for specific loss, 77 P.S. § 513.

Prior to 1993, Section 204 of the Act allowed an employer to take a credit only for unemployment compensation benefits, and only against occupational disease awards. 77 P.S. 71 (1992), *Mosley v. W.C.A.B. (City of Pittsburgh),* 937 A.2d 607, 609 (Pa.Cmwlth.2007). In all other scenarios, claimants were permitted simultaneously to collect both unemployment compensation and workers' compensation benefits. *Id.* The section was amended in 1993 to expand the class of workers' compensation benefits subject to the offset for unemployment compensation, to include any partial or total disability award, not just one occasioned by occupational disease. Section 4 of the Act of July 2, 1993, P.L. 190.

The legislature again amended Section 204 in 1996 through Act 57 to add that an employer could receive credit against workers' compensation payments not only for unemployment compensation but for Social Security, severance, and pension benefits as well. Section 3 of the Act of June 24, 1996, P.L. 350. Act 57 further directed the Department of Labor and Industry to prepare the forms necessary for the enforcement

of Section 204 and to issue rules and regulations as appropriate. 77 P.S. § 71(d).

■ Reviewing the phrase "severance benefits" in Section 204(a) of the Act, 77 P.S. § 71(a), we conclude that the Commonwealth Court properly held that the phrase is clear and free from ambiguity. Severance benefits are occasioned by severance from employment. They are payable only when a worker's employment has been completely and permanently terminated. According to Black's Law Dictionary, the term "severance pay" means "[m]oney (apart from back wages or salary) paid by an employer to a *dismissed* employee." Black's Law Dictionary (Bryan Garner, et. al. eds., 8th ed., 2004) (emphasis added). In contrast, furlough is defined as "[a] leave of absence from military or other employment duty." *Id.* Therefore, according to Black's Law Dictionary, a severance benefit, unlike a furlough, is contingent on the dismissal of an employee.

This is consistent with the parties' use of the furlough allowance. The furloughed employee is not dismissed from employment; rather, he maintains an employment relationship with the employer to the extent the employee can be recalled to work. The employment relationship between an employer and a furloughed employee is maintained but held in abeyance due to an employer's lack of work or funds. A furloughed employee returns to employment with his seniority intact.

Thus, we agree with the Commonwealth Court that just as Claimant's furlough did not sever his relationship with Employer, his furlough allowance was not paid as compensation for a separation from his employment. If we concluded, as Employer would have us do, that a furlough allowance is a severance benefit, we would be expanding the scope of Section 204(a) of the Act to provide credit for a type of benefit that does not fall within the ordinary definition of severance benefits.[4]

4. The courts of other jurisdictions have likewise concluded that severance pay is only available upon the permanent termination of the employment relationship. *See Feola v. Valmont Industries, Inc.,* 208 Neb. 527, 304 N.W.2d 377 (1981) (finding that the payment of sever-

Moreover, even assuming *arguendo* that Employer is correct that the term "severance" is ambiguous, we still conclude that Employer is not entitled to a credit for the furlough allowance. We note that the Department has defined "severance benefit" at 34 Pa.Code § 123.2, pursuant to legislative directive, *see* 77 P.S. § 71(d) (directing the Department to issue appropriate rules and regulations for the enforcement of Section 204 of the Act), as follows:

Severance benefit—A benefit which is taxable to the employe and paid as a result of the employe's separation from employment by the employer liable for the payment of workers' compensation, including benefits in the form of tangible property. The term does not include payments received by the employe based on unused vacation or sick leave or otherwise earned income.

34 Pa.Code § 123.2. Thus, the regulatory definition of "severance benefits" specifically excludes "unused vacation or sick leave or otherwise earned income." We view the furlough benefit here as analogous to vacation and sick leave, and as "otherwise earned income." The courts of this Commonwealth have a long history · of prohibiting employers from taking a credit against workers' compensation for payments made for these forms of earned benefits.

In *Temple,* 285 A.2d 137, we held that the employer was not entitled to credit against a partial disability award for payments it made to the claimant as sick leave. In reaching this conclusion, we reasoned that sick leave, like vacation pay and wages, is an entitlement for services performed, as opposed to payments in lieu of compensation, which are made in relief of the claimant's inability to work. We observed that accrued

ance benefits does not extend the employment period, but, rather, confirms that the employment had terminated); *Compton v. Shopko Stores, Inc.,* 93 Wis.2d 613, 287 N.W.2d 720 (1980) ("severance pay, by definition, means compensation given to an employee upon the severance of his employment relationship with his employer ... [it] does not extend the employment period, but terminates it."); *Republic Steel Corporation v. Maddox,* 275 Ala. 685, 158 So.2d 492 (1963) (finding that because an employee had accepted severance pay, he had completely terminated the employment relationship), *rev'd on other grounds,* 379 U.S. 650, 85 S.Ct. 614, 13 L.Ed.2d 580 (1965).

entitlements are available to workers regardless of whether they are injured at work:

It must be remembered that this employe gave up his available sick leave pay for the 41 1/2 day period, so that had he returned to his duties at the end of that period, under the insurance carrier's view in this case it would have paid him nothing for his disability. Yet, claimant would have lost his sick leave which would otherwise have been available to him for non work-incurred disabilities which may have occurred thereafter. We have no hesitation in holding that such a construction of the workmen's compensation laws was never intended by the Legislature.

*Temple*, 285 A.2d at 140. We reasoned that awarding the employer credit for a period during which the claimant depleted his accrued benefits would force the claimant to bear the cost of the work-related disability, which was a result the legislature never intended. *Id. See also Peoples Natural Gas v. W.C.A.B. (Keith)*, 65 Pa.Cmwlth. 119, 441 A.2d 1364, 1367 (1982) (noting that the pertinent analysis in *Temple* was that sick leave is something that an employee is entitled to regardless of whether he has suffered a compensable injury).

Applying *Temple*, the Commonwealth Court has held that an employer is not entitled to credit for payments that come from, and therefore reduce, an accrued entitlement that the employee has built up by his performance of services for the employer. In *Hildebrand v. W.C.A.B. (Fire Dep't/City of Reading)*, 111 Pa.Cmwlth. 24, 532 A.2d 1287 (1987), the court held that "if Claimant's disability pension is an accrued entitlement which has been built up as a result of his services for Employer, or if he would be entitled to the pension regardless of whether he had suffered a compensable injury, Employer is not entitled to a credit for those payments." The court continued, "[i]f, however, the pension payments are made in relief of Claimant's inability to labor, then Employer is entitled to a credit for those payments." Ultimately, the *Hildebrand* court concluded that the record did not contain sufficient information upon which the determination could be based, and remanded for further findings.

Similarly, in *Toborkey v. W.C.A.B. (H.J. Heinz)*, 655 A.2d 636 (Pa.Cmwlth.1995), the Commonwealth Court denied credit to the employer for death and disability insurance payments it made to a disabled employee because it found that the payments were from an accrued benefit similar to sick leave. The court reasoned that payment to the claimant of the death and disability insurance depleted this benefit, rendering it unavailable to the claimant for any non-work-related disability which may occur later. *Id.* at 638.

The Commonwealth Court has consistently applied this analysis to questions of employer credit. *See Bartholetti v. W.C.A.B. (School Dist. of Philadelphia)*, 927 A.2d 743 (Pa. Cmwlth.2007) (holding that employer was not entitled to credit for sick leave payments); *Dana Corp. v. W.C.A.B. (Beck)*, 782 A.2d 1111, 1114–15 (Pa.Cmwlth.2001) (holding that employer was not entitled to credit for payments of supplemental unemployment benefits because the benefits were in the nature of wages, being an accrued entitlement, and receipt of such payments required claimant to expend an exhaustible benefit); *Occidental Chemical Co. v. W.C.A.B. (Knight)*, 756 A.2d 152 (Pa.Cmwlth.2000) (same); *School Dist. of Philadelphia v. W.C.A.B. (March)*, 109 Pa.Cmwlth. 463, 531 A.2d 547, 551 (1987) ("The criterion for allowing a credit against an employer's workmen's compensation obligation is whether the claimant would be required to deplete benefits which could have been used for other purposes"); *Hartwell v. W.C.A.B. (McLean Trucking Co.)*, 96 Pa.Cmwlth. 313, 507 A.2d 902, 904 (1986) (denying employer credit for payments which "come out of, and therefore reduce, an accrued entitlement which the employee has built up by his performance of services for the employer," such as payments out of earned sick leave or vacation pay); *Simpson v. W.C.A.B.*, 48 Pa.Cmwlth. 51, 408 A.2d 1186 (1979) (holding that an employer was entitled to credit for medical and hospital expenses, which were paid by health insurer as benefit under collective bargaining contract, since claimant was not required to deplete benefits that would have been otherwise due to him or which would have been

used for other purposes); *Steinle v. W.C.A.B.*, 38 Pa.Cmwlth. 241, 393 A.2d 503 (1978) (same).

Although most of these cases arose before Act 57 amended Section 204, we find their reasoning persuasive. The parties' CBA demonstrates that they created the furlough allowance as an accrued, exhaustible benefit, similar to sick leave or vacation leave: it was accumulated over years of service, R.R. 95a; a furloughed employee who is returned to work and then furloughed again within one year is entitled to payment of unused furlough, R.R. 96a; an employee who returns to work may once again begin to accrue furlough benefits, R.R. 96a; and, further, accrued, unused vacation days are to be paid to furloughed employees after the final check, whether its a paycheck or a furlough check, R.R. 95a.

It is crucial to our analysis that the furlough allowance, like sick or vacation leave, is something to which Claimant would have been entitled regardless of whether he had been injured. An employer of an employee injured at work cannot pay for the resulting disability with the employee's sick or vacation pay, *Temple*; similarly, an employer cannot force the employee to bear the costs of his work-related injury by exhausting his accrued furlough allowance.

The Employer, not the Claimant, is liable for compensation for Claimant's work-related injury. 77 P.S. § 431; *Peterson v. W.C.A.B. (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116, 1120 (1991). *See also Hannaberry*, 834 A.2d at 528 ("the Workmen's Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives."). It is repugnant to the intent of the Act to require an employee to expend benefits which he labored to accrue, and which are payable, exhaustible, and, again, accruable, like sick and vacation pay, to compensate himself after a work-related injury. *Temple*, 285 A.2d at 140.

Employer's reliance on *Kramer* does not alter this conclusion. The claimant in *Kramer* returned to work following a period of disability and was subsequently laid off after her

employer relocated to Maryland. She simultaneously received workers' compensation and a severance check pursuant to the terms of a CBA. This Court held that under Section 204(a) of the Act, the employer was entitled to credit against compensation benefits in the amount of the claimant's severance payment.[5] Addressing the issue of whether the credit in Section 204(a) of the Act applied to self-insured employers or only to insured employers, we noted that there was nothing irrational or arbitrary in permitting the employer to offset severance benefits:

> The worker experiences only one loss of earnings at a time, even if there is a prospect of compensation for that loss from multiple sources. The offset does not disadvantage the injured worker *vis-à-vis* his uninjured colleagues who also receive severance benefits because those workers do not receive a double benefit, in the form of workers' compensation payments, from the employer. Because the employment relationship is the basis for providing both severance payments and workers' compensation benefits (whether or not the compensation is paid through an outside insurer), the employer can avoid paying duplicate benefits for the same loss of earnings by using the offset. We conclude that the severance benefit offset bears a rational relationship to achieving the legislative goals.

*Kramer*, 883 A.2d at 535. In *Kramer*, therefore, we rejected the claimant's argument that workers' compensation benefits and severance benefits are intended to compensate different losses. *Id.*

Employer relies on *Kramer* simply as support for its position that the Act 57 amendment to Section 204(a) of the Act demonstrates a legislative intent to expand the scope of an employer's right to offsets. We do not disagree with this proposition. Before 1996, an employer was not entitled to credit for severance benefits; following the amendment, severance benefits are credited against the amount of the compensation award. Moreover, our discussion in *Kramer* does not

---

**5.** There was no question in *Kramer* that the benefits the claimant received were "severance benefits".

impact our analysis here, because, as fully explained herein, we are concerned with a furlough allowance, which is analogous to vacation and sick pay, rather than severance benefits, paid upon one's permanent separation from employment.[6]

Accordingly, for the foregoing reasons, the opinion of the Commonwealth Court is affirmed.

Former Justice GREENSPAN did not participate in the decision of this case.

Chief Justice CASTILLE, Justice SAYLOR and EAKIN, Justice TODD and Justice McCAFFERY join this opinion.

6. Employer also notes that on the pay-stub connected to the payment of the furlough allowance, it denoted the allowance as "SEV PAY." How the Employer chose to refer to the furlough allowance on the pay-stubs it issued does not impact our analysis.