## Kolar v. Preferred Unlimited Inc.

*Richard S. Julie*, for plaintiff.
*Matthew A. Taylor, James H. Steigerwald* and *Robert M. Palumbos*, for defendants.

BERNSTEIN, *J.*, July 18, 2010—By orders dated May 4 and May 10, 2010, this court ruled upon 399 claims of privilege by defendant Preferred Unlimited based upon the attorney-client and work-product privileges. Three hundred thirty-nine claims of privilege were denied. Sixty claims of privilege were affirmed. Because the appropriate enforcement of the societal value incorporated into privilege represents protections of the essential values of our democracy and material once disclosed forever ceases to be confidential, this opinion explaining these rulings is issued.

Of the 339 claims of privilege this court denied, 322 claimed only the limited statutory attorney-client privilege.[1]

Pennsylvania jurisprudence disfavors evidentiary privileges. As the Commonwealth Court succinctly said: " 'Exceptions to the demand for every man's evidence are not lightly created nor expansively construed, for they are in derogation of the search for truth.' Thus, courts should accept testimonial privileges 'only to the very limited extent that permitting a refusal to testify or excluding relevant evidence has a public good transcending the normally predominant principle of utilizing all rational means for ascertaining the truth.' "[2] It is because privileges are contrary to the search for truth in court that the party alleging privilege has the burden of demonstrating that privilege.[3]

The attorney-client privilege in Pennsylvania is statutory. This statute, 42 Pa.C.S. §5928, reads: "In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived

---

1. These claims were denied because the communications defendant claimed as privileged were not confidential communications from the client to his attorney. This court denied only 17 claims of privilege defendant brought under the broader attorney work-product privilege.

2. See *Koken v. One Beacon Insurance Co.,* 911 A.2d 1021, 1026-1027 (Pa. Commw. 2006); quoting *Commonwealth v. Stewart,* 547 Pa. 277, 282-83, 690 A.2d 195, 197 (1997).

3. See *T.M. v. Elwyn Inc.,* 950 A.2d 1050, 1063 (Pa. Super. 2008) (denying a claim of attorney-client and work product privilege since the defendant did not provide the trial court with any privilege log or explain its claim in any other way).

upon the trial by the client." The limits of the statutory attorney-client privilege have been reaffirmed in clearly annunciated recent appellate decisions.[4]

In contrast, the work-product privilege in Pennsylvania is not statutory. It is a product of common law adopted by the Supreme Court in our discovery rules. Pennsylvania Rule of Civil Procedure 4003.3 precludes discovery of "the mental impressions of a party's attorney or his or her conclusions, opinions, memoranda, notes or summaries, legal research or legal theories." The work-product privilege broadly protects most aspects of an attorney's work in representing a client.

The work-product privilege, unlike the attorney-client privilege, is broad because "the underlying purpose of the work-product doctrine is to shield 'the mental processes of an attorney, providing a privileged area within which he can analyze and prepare his clients case.'"[5] The work-product privilege enables attorneys to prepare cases without any risk that their own work will be used against their clients.[6]

Article V, section 10 of the Constitution delegates to the Supreme Court the power to prescribe general rules of conduct in the practice of law and in court. This plenary authority includes the right to codify the work-

---

4. *Nationwide Mutual Insurance Co. v. Fleming,* 924 A.2d 1259 (Pa. Super. 2007); *Nationwide Mutual Insurance Co. v. Fleming,* 992 A.2d 65 (Pa. 2010) (*affirmed on other grounds*); *Slusaw v. Hoffman,* 861 A.2d 269, 273 (Pa. Super. 2004); *In re Estate of Wood,* 818 A.2d 568, 571 (Pa. Super. 2003).

5. *Gocial v. Independence Blue Cross,* 827 A.2d 1216, 1222 (Pa. Super. 2003), quoting *Lepley v. Lycoming County Court of Common Pleas,* 481 Pa. 565, 573, 393 A.2d 306, 310 (1978).

6. *In re Estate of Wood,* 818 A.2d 568 (Pa. Super. 2003).

product privilege in the discovery rules. The Supreme Court's right to expand or contract the scope of the work-product privilege or indeed any Pennsylvania Rule of Civil Procedure or Rule of Evidence is unlimited. The Supreme Court purview in promulgating and interpreting their rules is as broad as their purview in determining the common law. The Supreme Court has the power to adopt the rule, to broaden or to narrow the scope of the rule, and interpret the work-product privilege on a case-by-case basis. The Supreme Court does not have the same plenary authority to rewrite or recast statutes such as the statutory attorney-client privilege.

The legislature, as a co-equal branch of government, has appropriated the right to determine the scope of evidentiary privileges such as the attorney-client privilege with the express approval of the Supreme Court. Pennsylvania privileges including the attorney-client privilege, the clergy-communicant privilege, and the marital privileges are all statutory. The Supreme Court has repeatedly and specifically affirmed the legislature's authority to codify these privileges in derogation of the search for truth in court. Although the Supreme Court could have codified privileges in the Pennsylvania Rules of Evidence,[7] they instead chose to adopt Pa.R.E. 501 which states: "privileges as they exist now or may be modified by law shall be unaffected by the adoption of these rules." By abdicating the codification of privileges, the Supreme Court has deferred the value laden decisions as to what is privileged to the legislative process.

---

7. Article V Section 10 of the Constitution of Pennsylvania provides the Supreme Court of Pennsylvania with the authority to promulgate Rules of Evidence.

In *Commonwealth v. Wilson,*[8] defendants charged with rape sought to subpoena records of the Delaware County Women Against Rape Crisis Center. The Supreme Court quashed this subpoena because it violated the sexual assault counselor statutory privilege. The Supreme Court deferred to legislative wisdom: "[T]he existence of a statutory privilege is an indication that the legislature acknowledges the significance of a particular interest and has chosen to protect that interest."[9] The scope of a privilege is a matter of statutory language. The discretion of courts in statutory construction is governed by specific long-standing statutory rules of interpretation.

A court's authority to interpret a statute is strictly circumscribed by the Statutory Construction Act. As Supreme Court Justice Baer said: "the principles governing this court's review when examining the language of a statute are settled."[10] The Statutory Construction Act states: "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly . . . When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."[11] A statutory privilege must be applied in accord with its plain terms. If the "provision at issue specifi-

---

8. 529 Pa. 268, 272, 602 A.2d 1290, 1292 (1992).

9. *Commonwealth v. Wilson,* 529 Pa. 268, 282, 602 A.2d 1290, 1298, (1992), *cert. denied,* 504 U.S. 977 (1992).

10. *Kelly v. W.C.A.B. (U.S. Airways Group),* 992 A.2d 845 (Pa. 2010); 1 Pa. C.S. §§1921-1927.

11. 1 Pa. C.S. §1921(a)-(b); see also, *Kelly v. W.C.A.B. (U.S. Airways Group),* 992 A.2d 845 (Pa. 2010); *Kramer v. W.C.A.B. (Rite Aid Corp.),* 584 Pa. 309, 320-21, 883 A.2d 518, 525 (2005); *Bowser v. Blom,* 569 Pa. 609, 617, 807 A.2d 830, 835 (2002).

cally details the materials it encompasses[,] no construction is required to effectuate the restriction."[12]

Because the attorney-client privilege is statutory and in derogation of the search for truth in court, it must be strictly construed. The statutory attorney-client privilege by its clear language unambiguously protects only confidential communications from a client. The language of the statute makes no mention whatsoever of communications by an attorney to a client.

Because the attorney-client privilege is statutory and its interpretation is limited by the Statutory Construction Act, Superior Court Judge, now Supreme Court Justice McCaffery accurately analyzed the "confidential communications to attorney" statute in *Nationwide Mutual Insurance Company v. Fleming.*[13] Justice McCaffery's opinion in *Nationwide* squarely addresses the scope and breadth of the attorney-client privilege. That opinion was joined by Superior Court Judge, now Supreme Court Justice Todd.[14] In *Nationwide,* the Superior Court was asked to determine whether document 529, authored and sent by Nationwide Insurance Company's general counsel, was protected by the attorney-client privilege. Recipients of document 529 included Nationwide executives and three other attorneys. The information conveyed in document 529 did not reveal any confidential information provided by any client. The claim of privilege was based only on the limited attorney-client privilege. No

---

12. *PennDOT v. Taylor,* 576 Pa. 622, 633, 841 A.2d 108, 114 (2004).

13. 924 A.2d 1259 (Pa. Super. 2007); Confidential communications to attorney, 42 Pa.C.S. §5928.

14. The opinion in *Nationwide* written by Judge, now Justice McCaffery, was joined by Judge, now Justice Todd, and Judge Bender.

claim of privilege was brought under the significantly broader attorney work-product privilege. By clear statutory interpretation, the Superior Court concluded "the document is *not* protected by attorney-client privilege."[15]

Both Justice McCaffery and Justice Todd share a deep appreciation for the significance and sanctity of the attorney-client privilege. They begin their discussion with the understanding that "the attorney-client privilege has deep historical roots and indeed is the oldest of the privileges for confidential communications in common law . . . . It is designed to foster confidence between attorney and client, leading to a trusting open dialogue . . . The privilege derives from the recognition that full and frank communications between attorney and client is necessary for sound legal advocacy and advice, which serve the broader public interests of 'observance of law and administration of justice."[16]

The Superior Court continued its analysis by correctly stating that the attorney-client privilege is strictly statutory:[17] "In Pennsylvania, the attorney-client privilege is codified under the following statute: *Confidential communications to attorney.* In a civil matter counsel shall not be competent or permitted to testify to confidential communications made to him by his client, nor shall the client be compelled to disclose the same, unless in either case this privilege is waived upon the trial by the client. 42 Pa.C.S.5928."[18]

---

15. *Nationwide,* 924 A,2d 1259, 1262 (Pa. Super. 2007). (emphasis in original)

16. See *Upjohn v. United States,* 449 U.S. 383 (1981).

17. *Nationwide,* at 1264.

18. *Id.* at 1264. (emphasis in original)

The *Nationwide* opinion analyzes the four distinct elements of the statutory attorney-client privilege. These elements are (1) the asserted holder of the privilege is or sought to become a client, (2) the person to whom the communication was made is a member of the bar of a court or his subordinate; (3) the communication relates to a fact of which the attorney was informed by his client, without the presence of strangers, for the purpose of securing either an opinion of law, legal services, or assistance in a legal matter, and not for the purpose of committing a crime or tort; and (4) the privilege has been claimed and is not waived by the client.

The only element of significance in *Nationwide* and the only element of significance in the issue before this court is element three, the substance of what is privileged. Affirming long-standing Pennsylvania precedent,[19] the well reasoned *Nationwide* opinion focuses on the fact that *only communications made by a client are confidential,* and only communications which relate to facts can be confidential. Because of this accurate reading of a very limited statute, Justice McCaffery concluded that responses from an attorney and what an attorney says or writes are not protected by the attorney-client privilege except "to the extent that such communications contain and would thus reveal confidential communications from the client."[20] Now Justice McCaffery joined by now Justice Todd said: "under this privilege, protection is available *only* for confidential communications made *by*

19. *Slusaw v. Hoffman,* 861 A.2d 269 (Pa. Super. 2004); *In re Estate of Wood,* 818 A.2d 568 (Pa. Super. 2003).

20. *Nationwide Mut. Ins. Co. v. Fleming,* 924 A.2d 1259, 1264 (Pa. Super. 2007).

*the client* to counsel . . . [c]ommunications *from* counsel to a client may be protected under section 5928, but *only* to the extent that they reveal confidential communications previously made by the client to counsel for the purpose of obtaining legal advice."[21]

The *Nationwide* opinion further outlined the appropriate methodology for determining whether the attorney-client privilege precludes presentation of specific information or evidence.[22] Justice McCaffery divided this methodology into two areas: whether the attorney-client privilege applies to a particular communication, and whether any exception or waiver has vitiated the privilege.

*Nationwide* is only the most recent, albeit most articulate, analysis of the limitations of the statutory attorney-client privilege. There is nothing new in the holding. In 2004, Judge Popovich wrote the opinion in *Slusaw v. Hoffman*.[23] That opinion, joined by judge, now Justice, McCaffery and Judge Bowes held that neither a subpoena requiring information about an attorney's activity as guardian ad litem nor an attorney's invoices were protected by the attorney-client privilege since neither revealed confidential communications.[24]

---

21. *Nationwide Mut. Ins. Co. v. Fleming,* 924 A.2d 1259, 1269 (Pa. Super. 2007). (emphasis in original)

22. The opinion stressed that only attorney-client privilege was implicated and the analysis only involved the statutory attorney-client privilege. The communications involved may have been protected by the attorney work-product privilege of Pa.R.C.P. 4003.3.

23. 861 A.2d 269 (Pa. Super. 2004).

24. The *Slusaw* opinion cited *In re Westinghouse Electric Corp. Uranium Contract,* 76 F.R.D. 47 (D.C. Pa. 1977), and *In re Tire Workers*

In 2003, *In re Estate of Wood*,[25] Judge Beck, joined by Judge Stevens and Judge Olszewski found no attorney-client privilege protected testimony concerning what an expert had previously told an attorney. Judge Beck ruled that a physician's comments and reports provided to an attorney are not protected by the attorney-client privilege saying: "[f]irst and foremost [the attorney-client privilege] is the rule that the privilege applies only to confidential communications made by the client to the attorney . . . ."[26] The attorney client privilege "simply does not apply to such statements."[27]

Each of these cases respected the importance of the privilege and noted that the attorney-client privilege has been an essential part of our adversary system since the founding of the colony. Importantly, these opinions also recognize that having been codified, the privilege requires judicial restraint in interpretation because of respect for our co-equal branch of government and principles of statutory construction.

The reaffirmation of long-standing statutory analysis of attorney-client privilege in *Nationwide* was appealed to the Supreme Court. Neither Justice McCaffery nor Justice Todd participated in the Supreme Court decision. The Supreme Court affirmed *Nationwide* in a plurality opinion, on alternative grounds. The Supreme Court plurality opinion affirming the Superior Court was authored by Justice Eakin and joined by Justice Baer.

---

*Asbestos Litigation,* 125 F.R.D. 617 (ED. Pa. 1989), for these same principles. Both cases applied Pennsylvania law.

25. 818 A.2d 568 (Pa. Super. 2003).

26. *Id.* at 571.

27. *Id.* at 571.

Justice Saylor, joined by Chief Justice Castille, authored an opinion in support of reversal. An opinion of the Supreme Court which does not command a majority is not controlling law.[28]

The Supreme Court plurality opinion ruled that even any arguable privilege had been waived because the defendant voluntarily disclosed documents on the same subject matter.[29] Easily finding waiver, the Supreme Court did not reach statutory interpretation. The justices who were in that plurality specifically "decline[d] to address the merits."[30] Thus, the Superior Court opinion in *Nationwide* remains the latest appellate statement of Pennsylvania law on the limits of attorney-client privilege and must be followed in every common pleas case.

As early as 1944, the Supreme Court of Pennsylvania in *Townsend Trust (No. 7)* held: "a lower court has no right to ignore the latest decision of the Superior Court of this Commonwealth on an issue which has been squarely decided. Until that decision should be overruled by the Superior Court itself or overruled by the Supreme Court, it is still the law of this Commonwealth, regardless of the decisions of any other court in the country, including the federal courts."[31] In *Marks v. Nationwide Insur-*

---

28. *Mt. Lebanon v. County Board of Elections of County of Allegheny,* 470 Pa. 317, 322, 368 A.2d 648, 650 (1977).

29. *Nationwide Mut. Ins. Co. v. Fleming,* 992 A.2d 65, 70 (Pa. 2010).

30. *Id.,* 992 A.2d at 70.

31. *Townsend Trust (No 7),* 349 Pa. 162, 168, 36 A.2d 438, 441, (1944).

*ance Co.,*[32] Judge Hester, joined by Judges Hudock and Musmanno, were confronted with a controlling Superior Court decision[33] upon which a petition for allowance of appeal was pending before the Supreme Court. These Superior Court judges held that even the pending petition for allocatur is irrelevant: "[W]e have long held that as long as the decision has not been overturned by our Supreme Court, a decision by our [Superior] Court remains binding precedent."[34] This basic rule of jurisprudence holds whether the official Superior Court opinion is a panel or court en banc decision. In *Commonwealth v. Spease,*[35] a judicial panel of Judge Tamilia, Judge Bender, and Judge Musmanno, applying *Marks v. Nationwide Insurance Co.*[36] to itself reiterated: "panel opinions of this court are binding precedent and we must follow them until overruled by either this court sitting en banc or by a higher court."

Of course any Superior Court decision may be overturned by the Supreme Court. However, a Superior Court statement of the law can only be overruled by a majority decision of the Supreme Court. A plurality decision does not overrule the holding below which remains precedential law across the Commonwealth. It is well-established that an opinion of the Supreme Court which does not command a majority is not controlling.[37]

---

32. 762 A.2d 1098 (Pa. Super. 2000).

33. *Brown v. Candelora,* 708 A.2d 104 (Pa. Super. 1998).

34. *Marks v. Nationwide,* 762 A.2d 1098, 1101 (Pa. Super. 2000).

35. 911 A.2d 952, 959 (Pa. Super. 2006).

36. 762 A.2d 1098 (Pa. Super. 2000).

37. See for example, *Mt. Lebanon v. County Board of Elections of County of Allegheny,* 470 Pa. 317, 368 A.2d 648 (1977).

As correctly parsed and explained in *Nationwide v. Fleming*,[38] the statutory attorney-client privilege in Pennsylvania is extremely limited. It covers only confidential factual communications from a client to her attorney. It is extended to communications from an attorney to a client only if, and only to the extent that, those communications from the attorney reveal the client's confidential factual communications.[39] This court ruled on 399 claims of privilege asserted by defendant Preferred Unlimited. Of the 339 claims of privilege which have been denied, 322 asserted only the attorney-client privilege. These claims were properly denied because the communications claimed as privileged did not reveal any confidential communications from the client to his attorney.

---

38. *Nationwide Mut. Ins. Co. v. Fleming,* 924 A.2d 1259, 1266 (Pa. Super. 2007).

39. Federal attorney-client privilege, unlike the limited statutory attorney-client privilege in Pennsylvania "protects two related, but different, communications: (1) confidential communications made by a client to his lawyer for the purpose of obtaining legal advice; and (2) any communication from an attorney to his client when made in the course of giving legal advice, whether or not that advice is based on privileged communications from the client." *United States of America v. Mobil Corp.,* 149 F.R.D. 533, 536 (NDTX 1993).