39 A.3d 287

**GIANT EAGLE, INC., Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD (GIVNER), Appellee.**

Supreme Court of Pennsylvania.

Submitted Oct. 13, 2010.

Decided March 13, 2012.

Sylvester A. Beozzo, Pittsburgh, for Giant Eagle, Inc.

Amber Marie Kenger, Richard C. Lengler, Harrisburg, Workers' Compensation Appeal Board, for Appellee Amicus Curiae, Workers' Compensation Appeal Board.

Quila Givner, pro se.

BEFORE: CASTILLE, C.J., SAYLOR, EAKIN, BAER, TODD, McCAFFERY, ORIE MELVIN, JJ.

### OPINION ANNOUNCING THE JUDGMENT OF THE COURT

Justice McCAFFERY.

In this appeal, we consider whether "compensation," as the word is used in Section 314(a) of the Workers' Compensation Act ("Act"),[1] 77 P.S. § 651(a), must include medical benefits as well as wage loss benefits. Because we conclude that it does not, we affirm the order of the Commonwealth Court.

Quila Givner ("Claimant") suffered a work-related injury on June 4, 1998, while in the employ of Appellant, Giant Eagle, Inc. ("Employer"). Pursuant to a notice of compensation payable, she received workers' compensation benefits that were ultimately calculated to be $266.87 weekly for a partial disability.

1. Act of June 2, 1915, P.L. 736, *as amended*, 77 P.S. §§ 1–1041.4; 2501–2626.

On October 29, 2007, Employer filed a suspension petition pursuant to Section 314(a), alleging that Claimant had failed to attend a physical examination scheduled by Employer. Section 314(a) relevantly provides:

§ 651. **Examination of injured employee; refusal or neglect to submit to**

(a) At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination or expert interview by an appropriate health care provider or other expert, who shall be selected and paid for by the employer. If the employe shall refuse upon the request of the employer, to submit to the examination or expert interview by the health care provider or other expert selected by the employer, a workers' compensation judge assigned by the department may, upon petition of the employer, order the employe to submit to such examination or expert interview at a time and place set by the workers' compensation judge and by the health care provider or other expert selected and paid for by the employer or by a health care provider or other expert designated by the workers' compensation judge and paid for by the employer.... The refusal or neglect, without reasonable cause or excuse, of the employe to submit to such examination or expert interview ordered by the workers' compensation judge, either before or after an agreement or award, shall deprive him of the right to compensation, under this article, during the continuance of such refusal or neglect, and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable.

77 P.S. § 651(a).

Following a hearing held on December 3, 2007, the workers' compensation judge ("WCJ") issued an order directing Claimant to attend a physical examination on December 12, 2007, with Employer making the transportation arrangements to facilitate her attendance. The order also provided that, should Claimant fail to attend the examination without good

cause, such failure could "result in suspension of [C]laimant's wage loss benefits." WCJ Order, dated 12/3/08, at 1.

At the hearing, Claimant agreed to attend the December 12th physical examination. However, she failed to do so, and Employer filed another suspension petition on December 17, 2007, again requesting a suspension of benefits pursuant to Section 314(a) of the Act.

On March 3, 2008, the WCJ held a hearing on the petition, which hearing Claimant failed to attend although notice was sent to her. The WCJ permitted Employer to submit its evidence, and thereafter, by Decision and Order dated May 16, 2008, the WCJ suspended Claimant's wage loss benefits effective December 12, 2007, because of her failure to attend the scheduled physical examination. The WCJ further ordered such suspension to remain in effect until such time as Claimant submitted to a physical examination by a physician of Employer's choice.

Employer appealed to the Workers' Compensation Appeal Board ("WCAB"), contending that the WCJ had erred by suspending only wage loss benefits and not medical expense benefits as well. The WCAB rejected Employer's arguments, citing *O'Brien v. Workers' Compensation Appeal Board (Montefiore Hospital)*, 690 A.2d 1262, 1265 n. 6 (Pa.Cmwlth.1997), for the proposition that case law has recognized a distinction concerning the nature of "compensation" depending on whether an employer's liability has or has not been established. The WCAB interpreted *O'Brien* as supporting the determination that medical expenses **are** included as "compensation" under the Act when the employer has not yet been determined to be liable, but medical expenses **are not** included as compensation when liability has been established, as it had been in the case *sub judice.*[2] Finding no authority in the Act that re-

2. The WCAB also rejected Employer's reliance upon 7 D. Torrey & A. Greenberg, *Workers' Compensation Law and Practice* § 13:70 (2008), where this commentary suggested that medical benefits should be included as compensation for purposes of Section 314(a). The WCAB noted that the same commentary also opined that forfeiture of medical benefits under Section 314(a) should be a remedy of last resort, ordered

quired the adoption of Employer's interpretation of compensation under Section 314(a), the WCAB concluded that the WCJ had committed no error.

On further appeal, the Commonwealth Court affirmed in a published opinion. *Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Givner)*, 984 A.2d 1034 (Pa.Cmwlth.2009). The Commonwealth Court, like the WCAB before it, principally relied upon the *O'Brien* footnote, ultimately concluding: "As case law is otherwise silent on this issue, and the [WCAB's] decision is perfectly logical, we decline to hold that in making such a finding the [WCAB] committed an error of law." *Giant Eagle, supra* at 1036. The Commonwealth Court then extended its holding by determining that a WCJ could, within her or his discretion, suspend both medical and wage loss benefits pursuant to Section 314(a) as the case required. The court stated in this regard: "Noting the humanitarian purposes of the Act, we hold that where a WCJ would suspend both wage loss benefits and medical benefits, the WCJ must expressly state that medical benefits are suspended in addition to wage loss benefits." *Id.*

We accepted review of this case, limited to consideration of the following issue, which we rephrased for clarity:

Whether "compensation" must include medical benefits as well as wage loss benefits under section 314(a) of the Workers' Compensation Act.

*Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Givner)*, 606 Pa.50, 994 A.2d 1083 (2010) (*per curiam*).

■■■ Our standard of review of an agency decision is limited to determining whether there has been a constitutional violation, an error of law, or a violation of agency procedure, and whether necessary findings of fact are supported by substantial evidence. Section 704 of the Administrative Agency Law, 2 Pa.C.S. § 704; *Pieper v. Ametek–Thermox Instruments Division*, 526 Pa. 25, 584 A.2d 301, 303 (1990). When, as here, the issue is the proper interpretation of a statute, it

by a WCJ only where wage loss benefits have already been suspended. WCAB Opinion, A08–1066, dated 3/31/09, at 5.

poses a question of law; thus, our standard of review is *de novo*, and the scope of our review is plenary. *Borough of Heidelberg v. Workers' Compensation Appeal Board (Selva)*, 593 Pa. 174, 928 A.2d 1006, 1009 (2007).

█ "The object of all interpretation and construction of statutes is to ascertain and effectuate the intention of the General Assembly. Every statute shall be construed, if possible, to give effect to all its provisions." 1 Pa.C.S. § 1921(a). "In giving effect to the words of the legislature, we should not interpret statutory words in isolation, but must read them with reference to the context in which they appear." *Mishoe v. Erie Insurance Co.*, 573 Pa. 267, 824 A.2d 1153, 1155 (2003) (quoting *O'Rourke v. Department of Corrections*, 566 Pa. 161, 778 A.2d 1194, 1201 (2001)).

█ Further, "[o]ur basic premise in work[ers'] compensation matters is that the Work[ers'] Compensation Act is remedial in nature and intended to benefit the worker, and, therefore, the Act must be liberally construed to effectuate its humanitarian objectives." *Hannaberry HVAC v. Workers' Compensation Appeal Board (Snyder, Jr.)*, 575 Pa. 66, 834 A.2d 524, 528 (2003) (quoting *Peterson v. Workmen's Compensation Appeal Board (PRN Nursing Agency)*, 528 Pa. 279, 597 A.2d 1116, 1120 (1991)). "Accordingly, borderline interpretations of the Act are to be construed in the injured party's favor." *Id.* (quoting *Harper & Collins v. Workmen's Compensation Appeal Board (Brown)*, 543 Pa. 484, 672 A.2d 1319, 1321 (1996)).

Here, we are to determine whether the word "compensation" in Section 314(a) of the Act **must** include medical benefits as well as wage loss benefits. The Act does not define "compensation" and, as the WCAB and Commonwealth Court each noted below, the Act uses the term variously. Thus, one section of the Act will clearly evidence that the term only pertains to wage loss benefits, but another section of the Act will imply that the term encompasses medical benefits as well as wage loss benefits. For this reason, we have recognized that the definition of "compensation" as used in the Act must

be decided on a section-by-section basis. *Berwick Industries v. Workmen's Compensation Appeal Board (Spaid)*, 537 Pa. 326, 643 A.2d 1066, 1067 (1994).

Standing on its own, Section 314(a) provides no concrete answer to whether its use of the term "compensation" must include medical benefits. It states in relevant part:

> The refusal or neglect, without reasonable cause or excuse, of the employe to submit to such examination or expert interview ordered by the workers' compensation judge, either before or after an agreement or award, shall deprive him of **the right to compensation, under this article,** during the continuance of such refusal or neglect, **and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable.**

77 P.S. § 651(a) (emphases added).

Section 314(a) requires that we determine what the General Assembly means by "the right to compensation, under this article." "[T]his article" references Article III of the Act, addressing issues of "Liability and Compensation," and providing the proper context for interpreting Section 314(a), which is found in Article III. However, the General Assembly specifically provided in Section 314(a) that "the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable." This language signals a focus on wage loss benefits, not medical benefits. Medical benefits are payable "as and when needed." 77 P.S. § 531(f.1). Wage loss benefits, by contrast, may be time-limited.[3] Thus, whether the General Assembly intended an **exclusive** focus on wage loss benefits as "compensation" is a possibility we must consider.

---

3. *See* Section 306(b)(1) of the Act, 77 P.S. § 512(1) (providing that the period of partial disability shall not exceed 500 weeks); *see also* Section 306(a.2)(1) of the Act, 77 P.S. § 511.2(1) (providing that "when an employee has received total disability compensation pursuant to [Section 306(a) of the Act] for a period of one hundred four weeks," the claimant is subject to being examined by a physician to determine the degree of his or her impairment).

When we examine Article III of the Act, the shifting and sometimes uncertain nature of the General Assembly's use of the term "compensation" is readily apparent. In general, however, Article III uses the word "compensation" most frequently to denote wage loss benefits. We shall begin by examining some of those provisions.

The first section of Article III (Section 301), establishes an employer's liability to pay "compensation." It provides in pertinent part:

Every employer shall be liable for compensation for personal injury to, or for the death of each employe, by an injury in the course of his employment, and such compensation shall be paid in all cases by the employer, without regard to negligence, according to the schedule contained in sections three hundred and six and three hundred and seven of this article....

77 P.S. § 431 (footnote omitted).

Section 301 specifically identifies two other sections of Article III as establishing the employer's liability for "compensation:" Sections 306 and 307. Section 307 provides for expenses for burial and a schedule of "death compensation" based on the deceased employee's wages. Medical expenses are not mentioned in this section. *See* 77 P.S. §§ 561–62, and 542.

Section 306 establishes the basic schedule of disability compensation. It also sets forth a provision for the payment of medical services and supplies, which we shall discuss more fully *infra*. Before setting forth the first of its numerous subsections, or "clauses" as they are called by the General Assembly, Section 306 provides: "The following schedule of compensation is hereby established." 77 P.S. § 511. Section 306 then sets forth clauses concerning the schedule of payment for three types of compensable injury: total disability, partial disability, and permanent injuries. *See* Section 306(a), 77 P.S. § 511, (total disability); Sections 306(a.1) and (a.2), 77 P.S. §§ 511.1 and 511.2, respectively (each modifying a claimant's right to total disability benefits); Section 306(b), 77 P.S. § 512, (partial disability); and Sections 306(c) and (d), 77 P.S.

§ 513, (permanent injuries). All of these sections establish a schedule of compensation based exclusively on wages. Thus, "compensation" is initially used in Section 306 to denote wage loss only or, in the case of many permanent injuries, "compensation" describes a fixed compensatory scheme based on wages. These provisions do not discuss "compensation" as a term applicable to medical benefits.

Section 306(f.1) of the Act, 77 P.S. § 531, is the one clause in Article III devoted to the employer's obligation to pay medical expenses.[4] This clause is notable in two respects. First, it is set off from the preceding clauses concerning total disability, partial disability, and permanent injuries by its own heading, which states: "Surgical and medical services and supplies." *See* 77 P.S. § 531 (incorporating this heading into the title of Section 531). This heading is in contrast to the heading preceding Sections 306(a)-(d), concerning the "schedule of compensation."

Second, Section 306(f.1) does not directly use the term "compensation" to describe the employer's liability with respect to medical care. Rather, it uses the word "payment." Section (f.1)(1)(i) relevantly begins: "The employer shall provide **payment** in accordance with this section for reasonable surgical and medical services ... as and when needed." 77 P.S. § 531 (emphasis added). This sub-clause also several times uses the phrase "payment for the services." *Id.* Indeed, throughout Section 306(f.1), the term "compensation" is nearly absent; rather, the employer's liability is described consistently in terms of "payment" or "reimbursement." *See* 77 P.S. § 531 (*passim* ).

However, the term "compensation," or its adjective form, does arise in a limited fashion in clause (f.1). Section 306(f.1)(7), (8), and (9) provide:

(7) A provider shall not hold an employe liable for costs related to care or service rendered in connection with a

4. Section 306(f.2) addresses matters pertaining to medical services by coordinated care organizations. 77 P.S. § 531.1. However, this clause does not directly address the employer's liability for making payments for medical services and, thus, does not inform our inquiry.

**compensable** injury under this act. A provider shall not bill or otherwise attempt to recover from the employe the difference between the provider's charge and the amount paid by the employer or the insurer.

(8) If the employe shall refuse reasonable services of health care providers, surgical, medical and hospital services, treatment, medicines and supplies, he shall forfeit **all rights to compensation for any injury or increase in his incapacity shown to have resulted from such refusal.**

(9) The payment by an insurer or employer for any medical, surgical or hospital services or supplies after any statute of limitations provided for in this act shall have expired shall not act to **reopen or revive the compensation rights for purposes of such limitations.**

77 P.S. § 531(7), (8), and (9) (emphases added). These subclauses do not indicate, **on their face,** whether the term "compensation" is meant to include payments for medical benefits.

When we look to numerous other sections of Article III, we observe that the term "compensation" appears to be used only in a manner denoting wage loss benefits. *See, e.g.,* Section 308, 77 P.S. § 601 (concerning periodic installments of compensation); Section 308.1, 77 P.S. § 565 (concerning compensation issues with respect to professional athletes); Section 310, 77 P.S. § 563 (concerning compensation for "aliens," where it refers to an entitlement to "fifty percentum of the compensation which would have been payable"); Section 316, 77 P.S. § 604 (concerning commutation of compensation); Section 317, 77 P.S. § 603 (concerning payment of compensation into a trust fund); and Section 320(a), 77 P.S. § 672(a) (concerning additional compensation for minors). Indeed, Section 308 facially appears to contradict any notion that "compensation," as used in Article III, includes medical benefits. It provides:

Except as **hereinafter** provided, *all* **compensation payable under this article** shall be payable in periodical installments, as the wages of the employe were payable before the injury.

77 P.S. § 601 (emphasis added). Article III's provision for medical benefits at Section 306(f.1), 77 P.S. § 531(f.1), **precedes** Section 308. Further, medical expenses are not to be paid in installments, but "as and when needed." 77 P.S. § 531(f.1).

By contrast, there are limited, albeit important, provisions where "compensation" may fairly be interpreted as including or meaning medical benefits. Section 301, setting forth the employer's general obligation to provide "compensation," indicates that compensation encompasses the medical benefits established by Section 306(f.1). *See Berwick, supra* at 1067 (discussed *infra* ). Further, one section of Article III directly equates medical benefits with "compensation." Section 306(e) provides:

> No compensation shall be allowed for the first seven days after disability begins, except as provided in this clause (e) **and clause** (f) of this section. If the period of disability lasts fourteen days or more, the employe shall also receive compensation for the first seven days of disability.

77 P.S. § 514 (emphasis added; footnote omitted).

Section 306(f) was amended and renumbered as Section 306(f.1) by the Act of July 2, 1993, P.L. 190. Because Section 306(f.1) addresses payments for medical expenses, Section 306(e) plainly denotes "compensation" as medical benefits. Additionally, we have interpreted "compensation" as used in Section 315 of the Act, 77 P.S. § 602, concerning the statute of repose affecting various claims made under the Act, as including medical as well as wage loss benefits. *Berwick, supra* at 1070.[5]

Thus, while Article III uses the term "compensation" in a frequent and consistent manner as indicating wage loss benefits, in a limited manner, Article III also uses the term to include medical benefits as well. This circumstance is instructive to our interpretation of Section 314(a)'s use of the phrase "the right to compensation, under this article." From Article

---

**5.** We shall discuss *Berwick, infra* to determine whether its analysis has direct applicability to the question now before this Court.

III, we conclude that the General Assembly did not intend that "compensation" under Section 314(a) must always be restricted to wage loss benefits, because Article III does not restrict "compensation" to wage loss benefits in all cases. However, neither does Article III always use the term "compensation" to include medical benefits. Therefore, "compensation" **need not** always include medical benefits as well as wage loss benefits under section 314(a), to directly answer the question we accepted for review. Instead, we discern in Article III a textual basis for the Commonwealth Court's holding. That is, in the proper circumstances, "compensation" under Section 314(a) **may** include medical benefits as well as wage loss benefits.

■ We come to this conclusion after additional statutory analysis. Because there are at least two valid interpretations of "compensation" as used in Section 314(a), there exists an ambiguity. *See Delaware County v. First Union Corp.*, 605 Pa. 547, 992 A.2d 112, 118 (2010); *Barasch v. Pennsylvania Public Utility Comm'n*, 516 Pa. 142, 532 A.2d 325, 332 (1987) (each holding that words of a statute are ambiguous when there are at least two reasonable interpretations of the text under review).

The Statutory Construction Act of 1972 provides that, among other statutory construction factors which may be applied to resolve ambiguities, we may consider:

(1) The occasion and necessity for the statute.

(2) The circumstances under which it was enacted.

(3) The mischief to be remedied.

(4) The object to be attained.

(5) The former law, if any, including other statutes upon the same or similar subjects.

(6) The consequences of a particular interpretation.

(7) The contemporaneous legislative history.

(8) Legislative and administrative interpretations of such statute.

1 Pa.C.S. § 1921(c).

Section 314(a) plainly gives the employer, at its expense, the right to compel its injured employee to submit to a medical examination or an "expert interview" at a reasonable time and place, at any time after the work injury. Section 314(a) also provides a mechanism to compel a claimant's compliance. This mechanism is measured and gradual. If the claimant refuses to attend a requested medical examination or interview, the employer **must** file a petition and a WCJ must determine whether the employer is entitled to relief. If the WCJ orders the examination or interview, the claimant shall be deprived of his or her right to "compensation" during any period of refusal to attend the examination or interview, if such refusal lacks reasonable cause or excuse, and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable. 77 P.S. § 651(a).

Thus, although it could have done so, the General Assembly in Section 314(a) does not come down on the claimant with the proverbial "ton of bricks" in the event of a refusal to attend the examination or interview. Rather, the WCJ is given discretion to order a physical examination or interview. Further, the powers granted to the WCJ to address the issue of the claimant's refusal to attend the examination or interview is evidently commensurate with what is required to induce the claimant to comply. A deprivation of wage loss benefits may certainly be sufficient to achieve the purpose and intent behind Section 314(a). In this case, for example, Claimant sacrifices $266.87 per week during the period she refuses to attend the WCJ-ordered medical examination.

Appellant argues, relevant to our application of the rules of statutory construction, that there may be times when a deprivation of wage loss benefits will not be sufficient inducement for compliance, for example, when a claimant is receiving only negligible wage loss benefits but is receiving ongoing medical

benefits. This argument appropriately focuses on the consequences of the interpretation of Section 314(a) made by the Commonwealth Court. *See* 1 Pa.C.S. § 1921(c)(6).

However, the Commonwealth Court's interpretation, which would allow the suspension of medical benefits in the appropriate case, adequately addresses the less usual instance where the claimant is unconcerned about a suspension of wage loss benefits. Moreover, the Act provides other mechanisms for an employer to challenge the reasonableness and necessity of the medical benefits a claimant is receiving, such as pursuing a utilization review ("UR") determination.

Appellant argues, with respect to the latter point, that without a medical opinion obtained under Section 314(a), an employer may not pursue a UR determination of a claimant's medical treatment without facing the consequence of being penalized for an unreasonable contest. Appellant bases this argument on the holding in *U.S. Steel Corp. v. Workers' Compensation Appeal Board (Luczki)*, 887 A.2d 817 (Pa. Cmwlth.2005) (*en banc*). In *U.S. Steel,* the Commonwealth Court affirmed the WCJ's award of attorney's fees for the employer's unreasonable continued contest of the denial of its UR request by a utilization review organization. The court based its decision on the fact that the employer pursued its challenge of the UR request denial without having any medical evidence to support the employer's **continued** contest, including an independent medical examination.

However, *U.S. Steel* did not view the reasonableness of the employer's continued contest under the circumstance of a claimant refusing to attend an independent medical examination. Therefore, *U.S. Steel* is significantly inapt. Further, as the Commonwealth Court observed, an employer incurs no risk by initiating a UR request in the first instance, and the UR determination may well be in the employer's favor. Therefore, the concerns Appellant voices with respect to the consequences of the Commonwealth Court's interpretation of the term "compensation" as used in Section 314(a) are not significant in our view, particularly as *U.S. Steel* deals with a materially different factual scenario.

Appellant also argues that the Commonwealth Court erred by concluding that the WCJ has discretion under Section 314(a) to deprive the claimant of either wage loss benefits only or both wage loss benefits and medical benefits, when Section 314(a) does not facially articulate such discretionary power. Section 314(a), however, empowers WCJs to deprive claimants of "compensation, under this article." We have determined that "compensation," as used in Article III more frequently denotes wage loss benefits, but it may also, in proper context, denote medical benefits. Therefore, as we have observed *supra*, there is a textual basis for WCJs to exercise the appropriate discretionary authority. As the WCAB asserts in its *amicus curiae* brief, the Commonwealth Court's determination that WCJs are vested with the discretion to deprive the claimant of wage loss benefits or both wage loss benefits and medical benefits "vindicates the purpose of" Section 314(a), "while advancing the Act's humanitarian objectives." WCAB's Brief at 5.[6]

Finally, we look to our analysis in *Berwick, supra,* to determine whether our holding in that case compels a different result here. *Berwick* is similar to the case *sub judice* in that both concern whether the General Assembly's use of "compensation" in a particular section of Article III denotes medical as well as wage loss benefits. *Berwick* dealt with the statute of repose affecting various claims made under the Act, set forth at Section 315. That section relevantly provides:

In cases of personal injury **all claims for compensation** shall be forever barred, unless, within three years after the injury, the parties shall have agreed upon the compensation payable under this article [Article III]; or unless within three years after the injury, one of the parties shall have filed a petition as provided in article four hereof.

77 P.S. § 602 (footnote omitted; emphasis added).

In *Berwick,* the claimant was injured at work slightly more than three years before she filed a claim petition. The WCJ determined that wage loss benefits were barred by Section

6. Claimant did not file a brief in this case; however, she did file a *pro se* "Response to Reproduced Record."

315's three-year statute of repose, but that medical benefits were not. The Commonwealth Court ultimately affirmed, and we reversed, determining that "compensation," as the term is used in Section 315, includes medical benefits as well as wage loss benefits.

In arriving at this determination, we first noted the relevance of Section 315's placement in Article III, which is the article that establishes an employer's liability for compensation. As previously noted, Section 301(a) specifically references the schedule of compensation set forth in Section 306, which, in addition to wage loss and other forms of compensation, includes employers' liability for payment of medical expenses. We concluded from this circumstance: "It is only logical to interpret section 315, the section **extinguishing** the employer's liability, as being parallel to the section [301] **establishing** the employer's liability, and therefore also to include medical expenses as an item of 'compensation.' " *Berwick, supra* at 1069 (emphasis in original).

We also viewed our interpretation through the lens of whether it avoided an absurd result. We concluded that it would:

We find the result reached herein to be the more reasonable and textually persuasive interpretation of the relevant provisions of the Act. Moreover, we believe it would be absurd to adopt an interpretation of section 315 that would place absolutely no time limitation on an employer's liability for medical expenses. While we do not wish to minimize the salutary purposes of the Act, this Court also has explained that statutes of limitation and repose

are vital to the welfare of society and are favored in the law. They are found and approved in all systems of enlightened jurisprudence. They promote repose by giving security and stability to human affairs. An important public policy lies at their foundation.

*Schmucker v. Naugle,* 426 Pa. 203, 205–206, 231 A.2d 121, 123 (1967) (quoting *United States v. Oregon Lumber Co.,* 260 U.S. 290, 299–300, 43 S.Ct. 100, 102–103, 67 L.Ed. 261

(1922)). An interpretation removing claims for medical expenses from the time limitations of section 315 would be particularly unsound where the legislature could easily have stated that such was its intent, but has failed to do so. *Berwick, supra* at 1070 (quotation marks deleted).

Although *Berwick* is informative to our task in the instant case, it is not dispositive. Section 314 does not set forth a statute of repose or limitations relevant to inchoate employee claims; rather, the relevant portion of Section 314(a) concerns the employer's right to request from an established claimant that he or she submit to a physical examination and the measured temporary punishment imposable should he or she refuse. Section 315 concerns employees who have not established any right to wage loss or medical benefits; Section 314 concerns claimants who have established these rights. Further, while Section 314(a) is important in the scheme devised by the General Assembly under the Act, as is every section of the Act, it is not "vital to the welfare of society" in the manner of a statute of repose or limitations. Moreover, Section 314(a) does not extinguish a liability imposed under the same article, it simply provides an inducement for a claimant to submit to an examination and a temporary punishment of some dimension should the claimant not submit. Section 315 addresses the right to "**all** claims" for compensation. 77 P.S. § 602 (emphasis added). Section 314(a) does not **bar** a claimant from receiving "all claims" for compensation, as does Section 315, but it imposes an anticipated temporary deprivation of the less encompassing "right to compensation" under Article III. 77 P.S. § 651(a).

Accordingly, in analyzing Section 314(a) within its proper context, exploring its plain language, and applying principles of statutory construction to the extent of that section's ambiguity, we arrive at the conclusion that the Commonwealth Court's interpretation and holding is sound. In doing so, we are ultimately guided by the critical understanding that because the Act is remedial in nature and intended to benefit the worker, it must be liberally construed to effectuate its humanitarian objectives, with borderline interpretations to be con-

strued in the injured party's favor. *Hannaberry HVAC,*
*supra* at 528. Thus, there is a consequence arising from
Claimant's establishment of a work-related injury and Appel-
lant's liability to pay for related medical expenses "as and
when needed." The balance must tip in favor of the Common-
wealth Court's interpretation of Section 314(a), not Appel-
lant's.[7]

7. In response to Justice Saylor's dissenting opinion, we first note that
we do not believe that readers of this opinion will be in any respect
confused as to our analysis or approach. For approximately twelve
pages of written text, the opinion sets out the manner by which this
Court determined the legislative intent of the word "compensation" as
used in Section 314(a), based on the premise that its meaning is not
plainly evident. When the reader arrives at the final page of the
opinion, which sets forth a summation that includes the observation
that we have considered the plain language contained in Section 314(a)
as well as the apparent ambiguities of that section, we trust that the
reader will not then conclude that everything that has preceded this
summation is thereby rendered counterfeit. Respectfully, we do not
believe that the potential confusion expressed by Justice Saylor is a
likely result.

While we readily acknowledge that there can be a principled opposite
point of view, as evidenced by Justice Saylor's substantive disagreement
with our holding, we respectfully suggest that the dissent's reliance
upon a general purpose of the enactment of Act 57 to reduce insurance
rates for employers is too emphatic. We caution that this legislative
purpose, while instructive, is not a license for courts to give more teeth
to the provisions added to the Workers' Compensation Act by Act 57
than the legislature itself provided. *Cf. Kelly v. Workers' Compensation
Appeal Board (U.S. Airways Group, Inc.),* 605 Pa. 568, 992 A.2d 845, 856
(2010) (rejecting an employer's argument that because Act 57 showed a
legislative intent to expand the scope of an employer's right to offsets,
that right should be extended beyond the legislative language to include
furlough allowances). Indeed, even had the temporary forfeiture of
"compensation" under Section 314(a) been plainly confined by the
legislature to wage loss, the salutary purposes of Act 57, together with
its many other significant provisions, would have fulfilled the legislative
intent. In this regard, we must respectfully note that Justice Saylor's
observation that "to allow 'compensation' to be construed as only
encompassing wage loss benefits would not promote" the purposes of
Act 57 (Saylor, J., D.O., at 302), is a misconstruing of our holding,
which does not so limit the meaning of "compensation," as used in
Section 314(a).

Moreover, it must not be forgotten that Act 57 is a component of the
larger Workers' Compensation Act, which has never abandoned its
principal focus. To construe Section 314(a) principally through the
lens of one of the primary legislative purpose of Act 57 is, in metaphori-
cal terms, to have the tail wag the dog. Given our analysis of Article
III, and mindful of all of the purposes of the Act, we feel that our

The question accepted for review is whether "compensation" **must** include medical benefits as well as wage loss benefits under Section 314(a). We hold that "compensation," as used in Section 314(a) need **not always** include medical expenses, and we accordingly affirm the Commonwealth Court.

Justices BAER and TODD join the opinion.

Justice EAKIN files a concurring opinion.

Justice SAYLOR files a dissenting opinion in which Chief Justice CASTILLE and Justice ORIE MELVIN join.

Justice EAKIN, concurring.

I agree with the Opinion Announcing the Judgment of the Court (OAJC), as I understand its holding to mean a Workers' Compensation Judge has the discretion to suspend either wage loss benefits or medical benefits or both, pursuant to 77 P.S. § 651(a). I write separately to note this conclusion could have been more direct, in both how it was reached and how it was stated. The OAJC devotes significant time demonstrating how the term "compensation" is utilized differently throughout the Workers' Compensation Act, which is true, but this discussion further muddles the meaning; suffice it to say, "compensation" in this context is ambiguous. Furthermore, concluding " 'compensation' ... need *not always* include medical expenses," OAJC, at 298 (emphasis in original), might directly answer the question presented for our review; however, it fails to answer the manifest question, "Now what?" To answer that question and bring the issue full-circle, I would reiterate and emphasize that because compensation does not always include medical expenses, a Workers' Compensation Judge has the discretion to suspend medical benefits along with wage loss benefits for failure to attend a medical examination.

holding falls comfortably within the entire legislative scheme and works to the mutual benefit of both claimants and employers.

Justice SAYLOR, dissenting.

I have several differences with the lead Justices' reasoning regarding the meaning of "compensation," as used in Section 314(a) of the Workers' Compensation Act.[1] First, to the extent that the lead opinion proceeds under a plain language interpretation of the statute, *see, e.g.*, Opinion Announcing the Judgment of the Court ("OAJC"), at 297 (asserting that the determination is derived from, *inter alia*, exploring Section 314(a)'s "plain language"), that position is undermined by its assertion that the provision is ambiguous. *See, e.g., id.* at 294 ("Because there are at least two valid interpretations of 'compensation' as used in Section 314(a), there exists an ambiguity."). Moreover, the text of a statute cannot be both clear and ambiguous, as those are mutually exclusive propositions. *Compare* 1 Pa.C.S. § 1921(b) ("When the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit."), *with id.* § 1921(c) ("When the words of the statute are not explicit, the intention of the General Assembly may be ascertained by considering, among other matters. . . .").

Insofar as the lead Justices find that the meaning of the term is unclear from the face of Section 314(a), I agree. Nonetheless, I am not of the opinion that "compensation" has two definitions when used in that provision. The lead opinion concludes that, while the word will generally pertain to wage loss benefits, it may also denote wage loss and medical benefits "in the proper circumstances." OAJC, at 294. Thus, the lead Justices find that the Workers' Compensation Judge ("WCJ") is vested with the discretion to determine whether to deprive a non-compliant claimant of wage loss benefits or wage loss and medical benefits. *See id.* at 295–96.

In my view, the General Assembly intended for "compensation" to have a single meaning in Section 314(a), *i.e.*, either wage loss benefits or wage loss and medical benefits. As noted in the lead opinion, that provision requires the WCJ to deprive the claimant of the "right to compensation, under this

1. Act of June 2, 1915, P.L. 736, art. III, § 314 (as amended 77 P.S. § 651(a)) (the "WCA" or the "Act").

article" when—without reasonable cause or excuse—the claimant refuses or neglects to comply with the WCJ's order to submit to a physical examination or expert interview. 77 P.S. § 651(a). Neither the WCAB nor Section 314(a) define the term "compensation," and although the provision's "right to compensation, under this article" language would seem to suggest that "compensation" has a uniform meaning throughout Article III of the Act, this is not the case. Indeed, and as developed in the lead opinion, the term has, at times, been construed to implicate wage loss benefits, but, in other provisions, it has been interpreted to pertain to wage loss and medical benefits. *See* OAJC at 291–94 (citations omitted). As such, the meaning of "compensation" is not clear from the face of Section 314(a), thereby resulting in an ambiguity. *See* 1 Pa.C.S. § 1921(c).

It stands to reason, though, that the term has a single definition for purposes of that section. To my knowledge, until this case, no appellate court of this Commonwealth had ever concluded that "compensation" had two meanings when used within the same provision in Article III. Rather, it had always been thought that the word denoted either wage loss benefits or wage loss and medical benefits, depending on the discrete statutory context in which the term was employed. *Cf. Berwick Indus. v. WCAB (Spaid)*, 537 Pa. 326, 329, 643 A.2d 1066, 1067 (1994) (collecting cases). Accordingly, and in the absence of express language indicating otherwise, I believe that, in keeping with the other provisions of Article III, the Legislature meant for "compensation" to have a single definition under Section 314(a).

Nor do I agree that the General Assembly vested the WCJ with the discretion to ultimately determine which benefits to suspend when—without reasonable cause or excuse—a claimant refuses or neglects to comply with the WCJ's order to submit to a physical examination or expert interview. *See, e.g.,* OAJC, at 296. Generally, when the Legislature allocates discretionary authority, it does so explicitly. *See, e.g.,* 77 P.S. § 2501(h) ("The secretary *may* adopt additional rules to establish standards and procedures for the evaluation, training,

promotion and discipline of workers' compensation judges." (emphasis added)). Indeed, the assembly did just that when it assigned WCJs the power to grant employers' petitions under Section 314(a). *See id.* § 651(a) (stating, among other things, that the WCJ "*may* at any time after such first examination or expert interview, upon petition of the employer, order the employe to submit himself to such further physical examinations or expert interviews" (emphasis added)). Notably, the Legislature did not allot such authority with respect to depriving a non-compliant claimant of "compensation"; instead, it made the removal of "compensation" mandatory. *Id.* (providing, in relevant part, that the WCJ "*shall* deprive [the claimant] of the right to compensation, under this article, during the continuance of such refusal or neglect" (emphasis added)).

Therefore, to accept the lead Justices' construction of Section 314(a), one would have to find that the General Assembly departed from its convention of explicitly allocating discretionary authority and, instead, implicitly granted the WCJ the power to decide which benefits to suspend by way of the definition of "compensation." If the Legislature had intended for such a highly unusual scheme, I believe that it would have expressly indicated that in the statute. I am also not familiar with any method of statutory interpretation in which a mandatory provision is converted into a quasi-discretionary one whereby a WCJ is ultimately reposited with the authority to determine the meaning of a central term, according to the facts and circumstances presented.

Further, I am troubled by the lead opinion's treatment of the statutorily prescribed factors for ascertaining legislative intent. *See* OAJC, at 294–95. While initially listing most of these codified canons of construction, the lead Justices appear to examine only one factor in its two pages of analysis: the consequences of a particular interpretation. *See id.* (only citing 1 Pa.C.S. § 1921(c)(6)). When performing a detailed review of the statutorily prescribed factors, however, it appears that the Legislature intended for "compensation" to denote both wage loss and medical benefits in Section 314(a).

Beginning with the occasion for the statute, the mischief to be remedied, the object to be attained, and the contemporaneous legislative history, *see* 1 Pa.C.S. § 1921(c)(1), (3), (4), (7), the WCA, as a whole, is intended to benefit the worker. *See, e.g., Harper & Collins v. WCAB (Brown)*, 543 Pa. 484, 490, 672 A.2d 1319, 1321 (1996).[2] The Act has been amended a number of times since it originally became law, most recently in 1996. That year, the Legislature passed Act 57.[3] In addition to preserving the underlying remedial purpose of the WCA, Act 57 introduced a cost-containment overlay to the workers' compensation scheme. Among its many revisions, Act 57 gave employers the ability to subject a claimant to a physical examination or expert interview at anytime after an injury. *See* 77 P.S. § 651(a). Because such examinations are likely the only means by which employers can determine the existence and/or the extent of a change in a claimant's vocational capacity or medical condition, *see, e.g., Linton v. WCAB (Amcast Indus. Corp.)*, 895 A.2d 677, 682 (Pa.Cmwlth.2006), this amendment provided employers with a mechanism to enforce their rights under the WCA. *See, e.g., Rauch v. WCAB (Kids Wear Servs., Inc.)*, 808 A.2d 291, 295–96 (Pa.Cmwlth. 2002).

Act 57's focus on cost-containment is also supported by its legislative history. According to a number of lawmakers, the General Assembly enacted the legislation based on the belief that its predecessor, Act 44,[4] failed to reduce workers' compensation insurance rates for employers.[5] Indeed, several

---

2. *See generally* 82 AM.JUR.2D *Workers' Compensation* § 1 ("The philosophy underlying workers' compensation laws is that industrial accidents are inevitable incidents of modern industry and that their burden should not be borne by the victim.").

3. *See* Act of June 24, 1996, P.L. 350, No. 57 ("Act 57").

4. *See* Act of July 2, 1993, P.L. 190, No. 44 ("Act 44").

5. *See, e.g.,* LEGISLATIVE JOURNAL, SENATE 2159 (June 19, 1996) ("[T]he number one issue that we heard, before Act 44 and since Act 44, has been the cost of doing business in Pennsylvania, the cost of trying to compete to create jobs in Pennsylvania."); *id.* at 2169 ("The perception of Pennsylvania in the area of workers' compensation is that we are one of the highest rated States in the nation, and that the cost of doing business, because of workers' compensation, is a hindrance."); *id.* at

legislators expressed their concern that—without reform—Pennsylvania businesses would re-locate to surrounding states to avoid the "spiraling costs of workers' compensation insurance." LEGISLATIVE JOURNAL, SENATE, *supra,* at 2159; *see, e.g.,* LEGISLATIVE JOURNAL, HOUSE 1602 (June 19, 1996) ("How do we compete for new jobs—or keep the ones we have—when companies tell us that, next to taxes, our outrageously high workers' compensation costs are the biggest issue businesses face?").

Turning to the consequences of a particular interpretation, *see* 1 Pa.C.S. § 1921(c)(6), construing "compensation" to only refer to wage loss benefits would not further the objectives of Act 57 and Section 314(a) in a range of circumstances. For instance, suspension would be ineffectual where the claimant was receiving negligible or no wage loss benefits, but continuing to receive medical benefits, *e.g.,* where the claimant has returned to work. In those cases, suspending wage loss benefits would not likely engender compliance with the WCJ's directive to submit to a physical examination or expert interview, as the claimant would incur little or no penalty for failing to comply with that order, thus rendering the statute's enforcement mechanism meaningless. This, in turn, would inhibit the employer from exercising its rights under the WCA, as the employer would be unable to evaluate the existence and/or the extent of a change in the claimant's vocational capacity or medical condition. In sum, to allow "compensation" to be construed as only encompassing wage loss benefits would not promote the cost-containment overlay of Act 57, and therefore, fail to effectuate the purpose behind the legislation.

Although this interpretation of the term may seem harsh, as it results in a claimant losing all of his or her workers' compensation benefits, it is appropriate when considering the design of the statute. First, a claimant only loses wage loss

2176 (expressing the view that Act 44 did not deliver on its promise of significantly reducing workers' compensation insurance rates for employers); *id.* at 2177 (arguing that Act 57 "will go greatly in curbing costs, it will achieve greatly in retaining and the ability to create jobs and job expansion, and it will provide full coverage for those who are in need of that coverage").

and medical benefits after a series of steps. The employer must initially petition the WCJ to have the claimant submit to a physical examination or interview, and the WCJ must then grant that petition, which it need not do. The claimant must thereafter refuse or neglect to comply with the WCJ's order, subject to exceptions. Only then is the claimant deprived of wage loss and medical benefits. *See* 77 P.S. § 651(a). The claimant is thus afforded considerable opportunities to prevent the suspension of his or her benefits.

Second, a claimant is not deprived of those benefits in every instance in which the claimant does not comply with the WCJ's directive, but rather, only when the claimant does so "without reasonable cause or excuse." *Id.* Presumably, this language accounts for those instances where the claimant reasonably fails to attend a WCJ-mandated physical examination or expert interview, for example, due to an illness. Therefore, the WCJ is allowed to consider the circumstances surrounding the claimant's absence before directing the suspension of wage loss and medical benefits, as Section 314(a) requires.

Lastly, those benefits are not permanently suspended, but instead, are only removed "during the continuance of such refusal or neglect." *Id.* Thus, even after the WCJ suspends wage loss and medical benefits, the claimant is not forever barred from receiving those benefits. The claimant only has to comply with the WCJ's order to again obtain wage loss and medical benefits.

Accordingly, I would hold that "compensation," as used in Section 314(a), denotes both wage loss and medical benefits.

Chief Justice CASTILLE and Justice ORIE MELVIN join this Dissenting Opinion.