# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania,   :
Department of Labor and Industry,   :
Uninsured Employers Guaranty Fund,   :
                Petitioner   :
  :
         v.   :   No. 1849 C.D. 2014
  :   Argued: March 9, 2016
  :
Workers' Compensation Appeal   :
Board (Kendrick and Timberline   :
Tree & Landscaping LLC),   :
             Respondents   :


BEFORE:     HONORABLE MARY HANNAH LEAVITT, President Judge
                 HONORABLE RENÉE COHN JUBELIRER, Judge
                 HONORABLE ROBERT SIMPSON, Judge
                 HONORABLE P. KEVIN BROBSON, Judge
                 HONORABLE PATRICIA A. McCULLOUGH, Judge
                 HONORABLE ANNE E. COVEY, Judge
                 HONORABLE MICHAEL H. WOJCIK, Judge


OPINION
BY JUDGE COHN JUBELIRER           FILED: May 9, 2016

The Uninsured Employers Guaranty Fund (Fund) petitions for review of an Order of the Workers' Compensation Appeal Board (Board) affirming and amending an order of a Workers' Compensation Judge (WCJ). The WCJ granted Larry Kendrick's (Claimant) Claim Petition against the Fund seeking total disability (wage loss) and medical benefits as of the date of Claimant's injury, November 7, 2011. The Board affirmed the WCJ's decision to grant medical benefits as of the date of Claimant's injury, but limited the Fund's liability for

wage loss benefits to payments due after February 8, 2012, the date the Fund received notice of Claimant's injury. On appeal, the Fund contends that the Board erred in requiring it to pay Claimant's medical benefits prior to the date it received notice of the claim. For the reasons that follow, we reverse in part and affirm in part.

The parties jointly stipulated to the facts in this case.[1] Claimant was injured in the course and scope of his employment with Timberline Tree & Landscaping, LLC (Employer) on November 7, 2011. Claimant filed a Claim Petition against Employer on or about November 16, 2011, which was not accepted by Employer. It was determined by Claimant at a December 21, 2011 hearing that Employer was not insured for workers' compensation purposes in Pennsylvania.

Claimant filed a Notice of Claim against the Fund on February 8, 2012, that served to notify the Fund of his injury and that Employer was uninsured. Claimant then filed a Claim Petition against the Fund on March 6, 2012. "As it appear[ed] that [E]mployer ha[d] no intention of voluntarily paying the claim, the [Fund] agree[d] to pay the claim set forth [in the Claim Petition]." (Stipulation ¶ 8, R.R. at 156a.) The parties stipulated that "Claimant sustained a compensable work-related injury on [November 7, 2011], for which the Claimant is entitled to receive workers' compensation benefits from the secondarily liable [Fund] due to the primary liable Employer's failure to accept or pay the claim." (Stipulation ¶ 12, R.R. at 157a.) The description of Claimant's injury was stipulated to "as an orbital fracture, which has healed, as well as a traumatic brain injury with ongoing post-concussion symptomatology." (Stipulation ¶ 18, R.R. at 158a.)

---

[1] The parties' joint Stipulation is found at pages 155a-59a of the Reproduced Record.

The parties could not reach an agreement as to when Claimant's benefits were to commence. The Fund maintained that Claimant is not entitled to compensation until notice was provided to the Fund on February 8, 2012. (Stipulation ¶ 12, R.R. at 157a.) Claimant asserted that he is entitled to benefits retroactively to the date of the injury, November 7, 2011. (Stipulations ¶ 12, R.R. at 157a.) As agreed to by the parties, this issue was presented to the WCJ.

At issue is Section 1603(b) of the Workers' Compensation Act,[2] which provides:

> Time.--An injured worker shall notify the fund **within 45 days** after the worker knew that the employer was uninsured. The department shall have adequate time to monitor the claim and shall determine the obligations of the employer. **No compensation shall be paid from the fund until notice is given** and the department determines that the employer failed to voluntarily accept and pay the claim or subsequently defaulted on payments of compensation. **No compensation shall be due until notice is given.**

77 P.S. § 2703(b) (emphasis added). In his interpretation of Section 1603(b), the WCJ stated that he could "fathom no reason why the [General Assembly] could have intended in creating [the statute] to prohibit an injured worker from collecting both wage loss benefits and payment of medical expenses prior to the date when [n]otice was given." (WCJ Decision, Findings of Fact (FOF) ¶ 9.) The WCJ, finding no controlling precedent foreclosing the retroactive payment of benefits by the Fund when notice was given outside the statutory 45-day period, concluded, in light of the humanitarian purposes of the Act, that Claimant is entitled to both

---

[2] Act of June 2, 1915, P.L. 736, as amended, 77 P.S. § 2703(b), added by Section 7 of the Act of November 9, 2006, P.L. 1362.

wage loss and medical benefits as of the date of the injury. (WCJ Decision, FOF ¶ 9; Conclusions of Law ¶ 2.)

The Fund appealed to the Board. Upon review, the Board concluded that because Claimant did not notify the Fund until 48 days after learning that Employer was uninsured, the Fund did not owe Claimant wage loss benefits incurred prior to the date notice was given. (Board op. at 4.) However, the Board affirmed the WCJ insofar as the WCJ held that medical benefits were due as of the date of the injury. Id. According to the Board:

> Where a claimant fails to abide by the notice provisions of the Act[,] compensation becomes payable as of the date of notice. Therefore, the WCJ erred in awarding [wage loss] benefits as of Claimant's date of injury. Consequently we must amend the WCJ's Decision and Order to award Claimant [wage loss] benefits as of February 8, 2012.
>
> . . .
>
> Whether the term "compensation" includes medical benefits as well as [wage loss] benefits is determined on a section-by-section basis. Where the Act penalizes a claimant by limiting compensation for failure [to] take an action prescribed by the Act, compensation has been defined as only encompassing wage loss or indemnity benefits. . . . Claimant's failure to give prompt notice affects when his [wage loss benefits] begin[], not [the Fund's] responsibility to pay Claimant's medical benefits. . . . Therefore, the WCJ did not err in ordering [the Fund] to pay Claimant's medical benefits as of the date of injury, November 7, 2011.

(Board op. at 4-5 (internal citations omitted).) The Fund now petitions this Court for review.

While the Petition for Review was pending, on August 5, 2015, this Court issued its opinion in Lozado v. Workers' Compensation Appeal Board

4

(Dependable Concrete Work & Uninsured Employers Guaranty Fund), 123 A.3d 365 (Pa. Cmwlth. 2015) (*en banc*) which interpreted Section 1603(b) of the Act. In light of the potential impact of Lozado upon this case, this Court issued an order on January 19, 2016 directing the parties to file memoranda of law addressing specific questions potentially implicated by Lozado.[3]

In its memorandum of law, the Fund argues that Lozado is controlling precedent determining the consequences of Claimant's failure to file timely notice of a claim to the Fund. The Fund contends that Lozado stands for the proposition that claimants that do not meet the 45-day statutory deadline to provide notice of a claim to the Fund are prohibited from receiving both medical and disability benefits incurred prior to notice being provided. The Fund argues that Lozado is consistent with the plain language of the Act, where the term "compensation" under Article XVI of the Act is defined in Section 1601 of the Act, 77 P.S. § 2701, as including both disability and medical benefits.

Claimant argues in his memorandum of law that the Act allows for liberal payment of medical expenses. Claimant, like the Board, cites to our Supreme Court's decision in Giant Eagle, Inc. v. Workers' Compensation Appeal Board (Givner), 39 A.3d 287, 291 (Pa. 2012), in which the Supreme Court interpreted the term "compensation" as used in a different section of the Act by differentiating between the provision of medical benefits and wage loss benefits. Claimant contends that the majority of medical expenses in workers' compensation cases are

---

[3] The Board filed an Application for Remand on February 10, 2016 seeking to have the case remanded so that it may consider the facts in the case in light of Lozado. In the Application, the Board stated that "if the Board would have had the benefit of Lozado in this case, it may have resulted in a decision different from that issued in the September 19, 2014 Opinion and Order." The Board's application was denied by a per curiam order of this Court on February 19, 2016.

typically incurred when a claimant is initially treated following an injury and that the Fund's interpretation of the Act would preclude payment of the majority of medical expenses, penalizing medical providers who are not responsible for the employer's lack of insurance. Claimant argues that, because the purpose of Article XVI of the Act is both to provide benefits to injured employees of uninsured employers and to provide payment to medical providers who care for injured workers, the term "compensation" as used in Section 1603(b) must be construed as excluding medical benefits.

In Lozado, a claimant who was injured while working for an uninsured employer filed notice of a claim to the Fund eight months after he knew his employer was uninsured. The central issue in that case was whether failure to provide timely notice pursuant to Section 1603(b) of the Act acted as a complete bar to compensation, or whether compensation is simply delayed until notice is provided. Lozado, 123 A.3d at 376. We examined Section 1603(b) of the Act and noted:

> At issue here is the construction of the phrase: "[a]n injured worker shall notify the fund within 45 days after the worker knew that the employer was uninsured" when it is followed by "[n]o compensation shall be paid from the fund until notice is given," and that "[n]o compensation shall be due until notice is given." 77 P.S. § 2703(b). Importantly, the statute does not provide that compensation will not be paid "*unless* notice is given." Instead, Section 1603(b) states that compensation will not be paid "*until* notice is given." 77 P.S. § 2703(b) (emphasis added).

Id. at 376-77. We interpreted this provision by considering Section 311 of the Act, 77 P.S. § 631, which contains similar language to Section 1603(b). Section 311 of the Act provides, in relevant part, that "no compensation shall be due until such

6

notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed." 77 P.S. § 631.[4]  This Court has construed Section 311 of the Act as "establishing a scheme where compensation is payable from the date of the disability if the claimant gives notice 'within 21 days of the date he knew or should have known of the injury and its relationship to its employment.'"  Lozado, 123 A.3d at 377 (quoting Martincic v. Workmen's Compensation Appeal Board (Greater Pittsburgh International Airport), 529 A.2d 600, 602 (Pa. Cmwlth. 1987)).  However, under the Section 311 scheme, unless notice is provided within 120 days of the injury, compensation is only payable from the date notice was given.  Id.  We held:

> Like the mandatory language of Section 311, which requires notice within 21 days, the intent of Section 1603(b) is to apprise the Fund of the claim and to give the opportunity for a thorough investigation while the events are recent.  Unless the Fund is given the opportunity

---

[4] Section 311 of the Act provides in its entirety:

Unless the employer shall have knowledge of the occurrence of the injury, or unless the employe or someone in his behalf, or some of the dependents or someone in their behalf, shall give notice thereof to the employer within twenty-one days after the injury, no compensation shall be due until such notice be given, and, unless such notice be given within one hundred and twenty days after the occurrence of the injury, no compensation shall be allowed.  However, in cases of injury resulting from ionizing radiation or any other cause in which the nature of the injury or its relationship to the employment is not known to the employe, the time for giving notice shall not begin to run until the employe knows, or by the exercise of reasonable diligence should know, of the existence of the injury and its possible relationship to his employment.  The term "injury" in this section means, in cases of occupational disease, disability resulting from occupational disease.

77 P.S. § 631.

to investigate the claim while the events are recent, it will not be responsible for paying compensation incurred prior to notice being received by the Fund. Section 1603(b) does not serve as a bar to all compensation; instead, it strongly compels a claimant to quickly provide the Fund with notice by imposing a consequence for the delay. Accordingly, we hold that not providing the Fund with notice within 45 days of discovering that an employer is uninsured does not act as a complete bar to compensation, but . . . delays the provision of compensation to the date notice is given.

Id. at 377-78 (internal quotation marks and citations omitted).

We stated in Lozado that "those that do not meet the statutory deadline are only entitled to compensation for *medical treatment or lost wages* incurred from the date notice was provided." Id. at 378 (emphasis added). We now specifically consider whether the term "compensation" as used in Section 1603(b) includes both wage loss and medical benefits.

How the term "compensation" is defined is dependent upon where in the Act the term is used and how it is defined for purposes of the particular section. See, e.g., Giant Eagle, 39 A.3d at 291. The provisions regarding the Fund are set forth in its own article, Article XVI, and the definitions for the words "when used in this article shall have the meanings given to them in [ ]section [1601] unless the context clearly indicates otherwise." Section 1601 of the Act, 77 P.S. § 2701.[5] "Compensation" is specifically defined in Section 1601 as "[**b**]**enefits paid** pursuant to **sections 306 and 307**" of the Act. 77 P.S. § 2701 (emphasis added). Sections 306 and 307 of the Act provide for compensation for both wage loss benefits, see Section 306(a) (wage loss benefits for total disability claimants, such as Claimant), and medical benefits, see Section 306(f.1) (medical services and other services rendered by health care providers). 77 P.S. §§ 511, 531. Nothing in

_____

[5] Added by Section 7 of the Act of November 9, 2006, P.L. 1362.

the article clearly indicates that the term "compensation" as found in Section 1603 of the Act should be defined more narrowly than the broad definition in Section 1601 of the Act.

In Giant Eagle, the Supreme Court interpreted the term "compensation" in Section 314(a) of the Act, 77 P.S. § 651(a),[6] and, in the absence of a specific definition, employed the rules of statutory construction and considered how the term is used in other provisions of the same article of the Act, Article III. As used in section 314(a), the Supreme Court concluded that the term "compensation" does not always need to include medical expenses. Giant Eagle, 39 A.3d at 290. However, the Court noted that the meaning of "'compensation' as used in the Act must be decided on a section-by-section basis." Id. at 291. Unlike Article XVI of the Act, which addresses only the Fund and includes a definition of the term "compensation", Article III of the Act does not include a definition.

Our interpretation of the term "compensation" in Section 1603(b) as including both medical and wage loss benefits is based on the plain language of

---

[6] Section 314(a) of the Act provides, in relevant part:

> At any time after an injury the employe, if so requested by his employer, must submit himself at some reasonable time and place for a physical examination or expert interview by an appropriate health care provider or other expert, who shall be selected and paid for by the employer. . . . The refusal or neglect, without reasonable cause or excuse, of the employe to submit to such examination or expert interview ordered by the workers' compensation judge, either before or after an agreement or award, shall **deprive him of the right to compensation**, under this article, during the continuance of such refusal or neglect, and the period of such neglect or refusal shall be deducted from the period during which compensation would otherwise be payable.

77 P.S. § 651(a) (emphasis added).

Section 1601 and this Court cannot disregard the plain language of the Act "under the pretext of pursuing its spirit." 1 Pa. C.S. § 1921(b). Moreover, this interpretation is not in conflict with the humanitarian purposes of the Act. Employees injured while working for uninsured employers do *not* assume the costs of medical treatment provided to them prior to notice being given to the Fund. Medical providers are prohibited from requiring injured employees to pay for work-related treatment by Section 306(f.1)(7) of the Act, 77 P.S. § 531(7) ("A provider shall not hold an employe liable for costs related to care or service rendered in connection with a compensable injury under this act"). Medical providers, however, maintain their right to pursue a remedy outside the workers' compensation system against uninsured employers to cover the expenses incurred in the treatment of injured employees.

Accordingly, we interpret the term "compensation" in Section 1603(b) of the Act as including both wage loss benefits and medical benefits, and in accordance with Lozado, because the Claimant did not give notice to the Fund within 45 days after he knew the employer was uninsured, he will receive compensation for wage loss and medical benefits for any expenses incurred after notice was given to the Fund on February 8, 2012. The Order of the Board is reversed insofar as it requires the Fund to pay for medical expenses incurred prior to February 8, 2012. The Board's Order is affirmed in all other respects.

_____
**RENÉE COHN JUBELIRER,** Judge

10

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

Commonwealth of Pennsylvania, :
Department of Labor and Industry, :
Uninsured Employers Guaranty Fund, :
       Petitioner :
        :
    v. : No. 1849 C.D. 2014
        :
Workers' Compensation Appeal :
Board (Kendrick and Timberline :
Tree & Landscaping LLC), :
      Respondents :

## O R D E R

**NOW**, May 9, 2016, the Order of the Workers' Compensation Appeal Board (Board) entered in the above-captioned matter, is **REVERSED** insofar as it orders the Uninsured Employers Guaranty Fund (Fund) to pay medical benefits incurred for the treatment of Larry Kendrick's compensable injuries prior to February 8, 2012. The Board's Order is **AFFIRMED** in all other respects.

_____
**RENÉE COHN JUBELIRER,** Judge